**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LIONEL PRINCE DEON BOGLE, *Petitioner*, v. MERRICK B. GARLAND, Attorney General, *Respondent*. | No. 19-72290 Agency No. A086-972-722 ORDER AND OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 7, 2020
Portland, Oregon

Filed December 29, 2021

Before: Mark J. Bennett and Eric D. Miller, Circuit Judges,
and Benita Y. Pearson,[*] District Judge.

Order;
Opinion by Judge Bennett;
Dissent by Judge Pearson

---

[*] The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Immigration

The panel filed (1) an order withdrawing the opinion and dissent filed on June 23, 2021, denying a petition for panel rehearing, and denying on behalf of the court a petition for rehearing en banc; and (2) an amended opinion denying Lionel Prince Deon Bogle's petition for review of a decision of the Board of Immigration Appeals. In the amended opinion, the panel held that, in determining whether a conviction satisfies the thirty-gram limit of the personal-use exception to the ground of removability based on drug convictions, the circumstance-specific approach applies to determining the amount of marijuana involved in the conviction.

Under the personal-use exception of 8 U.S.C. § 1227(a)(2)(B)(i), a drug conviction does not render an alien removable if it was "a single offense involving possession for one's own use of 30 grams or less of marijuana." Bogle pleaded guilty to possessing more than one ounce of marijuana—28.35 grams. However, the police report stated that Bogle possessed 47.12 ounces of marijuana—1335.852 grams.

The panel first concluded that Bogle's conditional discharge for his Georgia drug offense was a "conviction" under the Immigration and Nationality Act, explaining that it satisfied the requirements for situations in which an adjudication of guilt has been withheld because the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

conditional discharge: (1) required Bogle to plead guilty to or be found guilty of possessing marijuana; and (2) imposed probation, with 16 days in confinement.

Joining the court's sister circuits to have addressed the issue, the panel deferred to *Matter of Davey*, 26 I. & N. Dec. 37 (BIA 2012), in which the BIA held that the circumstance-specific approach applies to the personal-use exception. The panel explained that § 1227(a)(2)(B)(i) does not unambiguously direct courts to use the either the categorical approach or the circumstance-specific approach, and further concluded that *Matter of Davey* is a reasonable interpretation. Specifically, consistent with *Nijhawan v. Holder*, 557 U.S. 29 (2009), which discusses the conditions that call for the circumstance-specific inquiry, the panel explained that the language of § 1227(a)(2)(B)(i) focuses on the conduct involved in an offense, not its elements, and that the scarcity of matching state or federal offenses meant that applying the categorical approach would render the personal-use exception meaningless or, at best, haphazard in application.

The panel observed that the circumstance-specific approach permits a petitioner to be deported on the basis of circumstances that were not judicially determined to have been present and which he may not have had an opportunity, prior to conviction, to dispute. However, the panel explained that the approach still requires fundamentally fair procedures and requires the government to prove that the quantity of marijuana exceeded thirty grams by clear and convincing evidence.

The panel concluded that the circumstances specific to this case easily satisfied that burden. The panel explained that the police report here was probative and reliable, noting

that it was detailed, internally consistent, and recorded observations of fact. The panel declined to adopt a rule that no police report could ever be sufficient, standing alone, concluding that such a categorical rule would be directly contrary to the Supreme Court's instruction to consider the particulars of each case, and would also impose a higher evidentiary standard for removals than for certain criminal convictions. In addition to the police report, the panel considered the following circumstances: (1) Bogle's failure to challenge the police report's record of the amount of marijuana, despite his protests that he did not know there was marijuana in the vehicle; (2) his reliance on the theoretical argument that he could have possessed somewhere between 28.36 and thirty grams, rather than any offer of proof that he *did* possess such an amount; (3) his testimony that the bag recovered by the police contained no more than 40 grams and that there was marijuana in the car; and (4) the fact that the police report indicated that the reported amount exceeded the statutory cutoff by a large degree.

Finally, the panel did not grant review of the denial of Bogle's application for cancellation of removal, explaining that, barring a colorable constitutional claim or question of law, the court lacks jurisdiction to review such a discretionary decision.

Dissenting, Judge Pearson joined the majority in concluding that that Bogle's conditional discharge was a conviction under the INA, that the circumstance-specific approach applies in this context, and in rejecting a categorical rule that a police report can never be sufficient to meet the government's burden. However, Judge Pearson concluded that the police report in this case did not satisfy the government's burden of clear and convincing evidence.

Judge Pearson wrote that the government could only deem Bogle removable after it had proven that the conviction itself, i.e. Bogle's plea, involved 30 grams of marijuana or more, and here, there was no indication that the police report was a part of the factual basis for Bogle's guilty plea, and nothing in the record indicated that Bogle admitted or stipulated to an amount of marijuana, that evidence was presented to the Georgia court concerning the quantity of marijuana, or that the court made any finding as to a quantity.

## COUNSEL

Kari E. Hong (argued), Boston College Law School, Newton, Massachusetts, for Petitioner.

David Kim (argued) and Aric A. Anderson, Trial Attorneys; Kohsei Ugumori, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

Raha Jorjani and Kelsey Morales, Alameda County Public Defender's Office, Oakland, California; Francisco Ugarte and Genna Beier, San Francisco Office of the Public Defender, San Francisco, California; for Amici Curiae Alameda County Public Defender's Office, Bronx Defenders, Brooklyn Defender Services, City of Atlanta Office of the Public Defender, The Legal Aid Society, The San Francisco Public Defender's Office, and Stand Together Contra Costa.

**ORDER**

The opinion and dissent filed on June 23, 2021, and published at 2 F.4th 1172 (9th Cir. 2021) are withdrawn. A new opinion and dissent are filed concurrently with this order.

Petitioner has filed a petition for panel rehearing and a petition for rehearing en banc. [Dkt. No. 63]. A majority of the panel votes to deny the petition for panel rehearing. Judges Bennett and Miller vote to deny the petition for panel rehearing, and Judge Pearson votes to grant the petition for panel rehearing. Judges Bennett and Miller also vote to deny the petition for rehearing en banc, and Judge Pearson recommends granting the petition. The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on en banc rehearing. *See* Fed. R. App. P. 35(f).

The petition for panel rehearing and rehearing en banc is **DENIED**. No further petitions for rehearing or rehearing en banc will be entertained.

**OPINION**

BENNETT, Circuit Judge:

Lionel Prince Deon Bogle, a native and citizen of Jamaica, seeks review of the dismissal by the Board of Immigration Appeals (BIA) of his appeal from the immigration judge's (IJ) order of removal and denial of his application for cancellation of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252 and deny the petition.

In general, a drug conviction is a removable offense under 8 U.S.C. § 1227(a)(2)(B)(i).   However, under the personal-use exception of § 1227(a)(2)(B)(i), a drug conviction does not render an alien removable if it was "a single offense involving possession for one's own use of 30 grams or less of marijuana."   Bogle pleaded guilty to possession of more than one ounce of marijuana.  One ounce is 28.35 grams, so viewing Bogle's plea alone, it is possible that the personal-use exception applies.  But the relevant police report states that Bogle was in possession of *47.12* ounces of marijuana—that is, 1335.852 grams—about 4300% over the thirty-gram limit.

The issue we must first decide is whether the categorical, modified categorical, or circumstance-specific approach applies to the personal-use exception's thirty-gram limit.  If the categorical approach applies, Bogle's offense did not *categorically* involve the possession of more than thirty grams of marijuana, and our analysis stops there.   If the modified categorical approach applies, we could look at certain relevant documents, but likely not the police report. *See United States v. Almazan-Becerra*, 537 F.3d 1094, 1097 (9th Cir. 2008).   If the circumstance-specific approach applies, we would then decide whether the circumstances *specific to this case* establish by clear and convincing evidence that Bogle's offense involved the possession of more than thirty grams of marijuana.

This is a matter of first impression in this circuit, and we conclude that the circumstance-specific approach applies to the thirty-gram limit of § 1227(a)(2)(B)(i)'s personal-use exception.   We further conclude that the circumstances specific to this case clearly establish that the amount of marijuana in Bogle's possession exceeded thirty grams.

## I.  FACTS

The circumstances are the following.

Bogle entered the United States in 2006 and became a lawful permanent resident in 2010.  In 2014, he was arrested in Georgia for possession with intent to distribute more than one ounce of marijuana.  The police report states that the officers found, in the rental car that Bogle was driving, three "gallon[-]size plastic bags . . . [containing] a green leafy material."   The police report also states: "The three gallon[-]size plastic bags contain[ing] the green leafy material tested positive for marijuana.  Bag number 1's net weight was 446.6 grams, bag number two's net weight was 450.5 grams and bag number three's net weight was 438.8, totaling 47.12 ounces equaling 2.94 pounds, with a street value of $9000.00."   Bogle received a "conditional discharge" for this offense by pleading guilty to possession of more than one ounce of marijuana under a Georgia statute that allows a court to place certain defendants on probation without a formal adjudication of guilt, in exchange for a guilty plea.  *See* Ga. Code § 16-13-2(a).  Under the statute, compliance with the conditions of probation guarantees the discharge of all charges relating to the offense once the term of probation expires, and that discharge "[is not] deemed a conviction for purposes" of Georgia law.  *See id.*

In 2016, the government initiated removal proceedings against Bogle under § 1227(a)(2)(B)(i) based on his controlled substance offenses,[1] and in 2019, the IJ found him

---

[1] Originally, the removal proceedings were based on two separate offenses: Bogle's offense in Georgia and a 2010 Arizona conviction for the attempted sale or transportation of marijuana.  According to the incident report for the Arizona conviction, there were five pounds of

removable. In those proceedings, the IJ considered Bogle's testimony and all forty-two exhibits that had been admitted—including those admitted in Bogle's 2017 hearings before a different IJ, and including the transcripts of Bogle's prior testimony in those hearings.

When Bogle testified in 2019, he never claimed the entire Georgia police report was inaccurate. Rather, he made a point to clarify that only parts of it were: "As to the police report especially in Georgia, Your Honor, I—it's not accurate. *It's not fully accurate*, Your Honor." (Emphasis added). In his decision, the IJ noted the inaccuracies Bogle alleged:

---

marijuana in the car Bogle was driving, along with receipts for two small shipping boxes and packing peanuts. Arizona later set aside Bogle's judgment of guilt for this offense, and in 2019, the IJ concluded that the conviction could not be considered for removal purposes, given that the government did not address the Arizona conviction in its brief and thus had "not met its burden to prove" that the "conviction was vacated solely for rehabilitative reasons or reasons related to [Bogle's] immigration status." *See Reyes-Torres v. Holder*, 645 F.3d 1073, 1077 (9th Cir. 2011). Nevertheless, the IJ still found, based on the facts underlying the vacated conviction, that there was "reason to believe [Bogle] was involved in drug trafficking" in Arizona. Plainly read, Bogle's testimony in 2019 compels the IJ's conclusion. Bogle, who was counseled at the time, stated: "I got [the marijuana]—well, someone gave it to me to keep. Pick it up at Phoenix, and they would just pay me like $300 to $500 just to hold it and then they will pick it up back from me." He also admitted: "I know there's marijuana in the bag. For sure, I know there's marijuana in the bag, Your Honor, and I accept the marijuana and took it back to Chandler. That much I did, Your Honor."

We do not consider the Arizona conviction a "circumstance specific to this case." And we need not decide whether the facts underlying that conviction and Bogle's testimony about them are circumstances specific to this case.

> [Bogle] did not say someone would tell him where to bring the vehicle when he got to Thompson; he did not get paid $180 to make the trip, but had $180 with him when arrested; he did not admit to the police that he knew marijuana was in the vehicle; and he did not tell the police he did it to make some extra money.

Bogle never disputed that nearly three pounds of marijuana were found in the car he was driving, as recorded in the police report.

Nor could he, as his testimony was directly to the contrary:

> Petitioner: [T]he rental car was not in my name. There was no evidence that I *knew* the marijuana was in the car.
>
> ***
>
> IJ: You're telling me that the 2014 case when you're in Georgia, driving a car, and all this marijuana in it just happened to be bad luck. You won the reverse lottery? Is that what you want me to believe?
>
> ***
>
> Petitioner: *Yes*, Your Honor because–
>
> ***

Petitioner: Because I didn't, I didn't—as I said, I—as I told the Honorable Judge before, the cops said they found it in secret compartment. I *didn't know* it was a secret compartment in the vehicle, Your Honor. . . . *I admit* there was marijuana in the car, and *I admit* to it but did I *knowingly* get in the car and drove it *knowing* that marijuana was there, no, I did not*.* I just did not, your Honor.

(Emphasis added). The only fair reading of this exchange is that Bogle claimed he did not know the three pounds of marijuana were in the car—not that Bogle claimed the three pounds were actually thirty grams or fewer. Some of Bogle's statements can only be reasonably interpreted as admissions that three pounds of marijuana *were* in the car, as described in detail in the police report—particularly his affirmative answer to the IJ's question about whether "all this marijuana in [the car Petitioner had rented and was driving] just happened to be bad luck" and his admission "I admit there was marijuana in the car, and I admit to it."

In Bogle's 2017 testimony as well, he disputed that he knowingly possessed the marijuana in the rental car. He testified: "I didn't *consciously knowingly* get into that car and drove it with *knowing* that marijuana was there. *I admit* I had possession of the car and it had possessed *the marijuana*, but I didn't *consciously and knowingly* get into that car that night *knowing it* was there." (Emphasis added). Bogle's counsel added: "The [Petitioner] has consistently contested the police report from [Georgia] as to whether or not he *knew the marijuana* was in the car in 2014." (Emphasis added). In other words, Bogle vigorously contested his *knowledge* of the marijuana in the rental car, but he never contested the *amount* of marijuana recovered

from the car.    In fact, in 2017, Bogle expressly acknowledged the amount of some of the marijuana in the rental car.  He testified that the police found a "little" bag of marijuana, "[n]othing more than say 40, *40 grams*," *in addition to* the marijuana they later found "hidden in the firewall of the car."  (Emphasis added).

It was against this backdrop that the IJ considered the Georgia police report.  The police report recorded the quantity of marijuana at over 1300 grams—1270 grams greater than the thirty-gram cutoff for the personal-use exception to apply.  And contrary to Bogle's testimony before the IJs that he did not know the marijuana was in the car,[2] the police report states that Bogle "told [the officer] that he knew that drugs [were] in the car and only did it to make some extra money."  And, according to the report, there was "a very strong odor of marijuana coming from inside of the car," which was a rental that Bogle was borrowing to drive from Atlanta to Augusta and back to Atlanta "for a friend." Upon inspecting the rental agreement, the officer "saw that [the vehicle] had been rented by someone else and that Bogle's name had not been added as a person permitted to drive it."   "Bogle was extremely nervous and breathing heavy . . . [with] his carotid artery pulsating on the right side

---

[2] Both the 2017 IJ and the 2019 IJ found that Bogle's testimony was not credible, because it was "inconsistent, implausible, and contained admissions to prior dishonesty to police officers regarding his actions." For example, while Bogle testified in 2019 that he was not paid $180 for the trip in 2009, he testified in 2017 that he was.  The 2019 IJ summarized: "In [Bogle's] previous proceedings in this matter, IJ Davis found [Bogle] 'was not only not credible, but he was less than honest.' Here, the Court also finds [Bogle] was not credible in the additional testimony he provided to the Court."   This, too, is part of the circumstances specific to this case.

of his neck." He told the officer he had been driving unsafely because he felt "sleepy."

The IJ specifically found that the report was "extremely probative" and its admission "fundamentally fair." The BIA "agree[d] . . . that the admission of the [Georgia police report] was fundamentally fair and reliable" and found that the "report reflect[ed] that the circumstances that resulted in [Bogle's] Georgia conviction involved his being in possession of approximately three pounds of marijuana." Indeed, Bogle confirmed in his 2017 testimony that he believed the police report stated the total amount of marijuana as "two pounds and nine ounce[s]."

Despite that knowledge, Bogle never objected to the amount recorded by the police report. He argues only that his conditional discharge "*could* have rested on facts that do not relate to no more than 30 grams of marijuana, [so] the Court cannot *conclusively* connect the [conditional discharge] to what is a controlled substance conviction under INA § 237(a)(2)(B)(i)." The BIA rejected that theory, dismissing Bogle's appeal of the IJ's decision.

## II. DISCUSSION

"Whether a particular conviction constitutes a removable offense is a question of law that we review de novo." *Alvarado v. Holder*, 759 F.3d 1121, 1126 (9th Cir. 2014). Bogle gives three reasons that his conviction did not so qualify. First, he argues that the conditional discharge for the Georgia offense was not a "conviction" for purposes of the Immigration and Nationality Act (INA). Second, he argues that the categorical or modified categorical approach applies to the thirty-gram limit of § 1227(a)(2)(B)(i)'s personal-use exception, and that his offense did not categorically involve more than thirty grams of marijuana.

Third, he argues that even if the circumstance-specific approach applies, the circumstances here do not clearly establish that he was in possession of more than thirty grams of marijuana. He also argues that the IJ erred in finding him statutorily ineligible for cancellation of removal, and that it was an abuse of discretion for the IJ to deny his application even if he were eligible. We address each argument in turn.

## A. Bogle's conditional discharge was a conviction under the INA.

Bogle argues that his conditional discharge was not a conviction as defined by the INA. He points to the lack of explicit evidence (like a plea agreement or plea colloquy) that he pleaded guilty to or was found guilty of marijuana possession. He also points to the rehabilitative purpose of conditional discharges under the Georgia statute. These arguments are unavailing.

The INA defines "conviction" as either "a formal judgment of guilt . . . or, if adjudication of guilt has been withheld, where"—

> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A). Bogle's conditional discharge for his Georgia offense was not a formal judgment of guilt, Ga. Code § 16-13-2(a), so to qualify as a conviction, the

conditional discharge must satisfy the two INA requirements for situations in which an adjudication of guilt has been withheld.

We hold that it does. First, Bogle's conditional discharge explicitly required him to plead guilty to or be found guilty of possessing marijuana. *Id.* Thus, we know that Bogle's conditional discharge satisfies the first INA requirement. Second, the terms of Bogle's conditional discharge imposed four years of probation, "the first 16 days to be served in confinement." The Georgia court both punished Bogle and restrained his liberty, satisfying the second INA requirement.

The rehabilitative nature of the conditional discharge statute does not change our conclusion that Bogle was convicted for purposes of the INA. Although the statute declares that "[d]ischarge and dismissal . . . shall not be deemed a conviction," *id.*, a state "cannot dictate how the term 'conviction' is to be construed under federal law." *Reyes v. Lynch*, 834 F.3d 1104, 1107 (9th Cir. 2016) (quotation marks and citation omitted). "Immigration law provides that, although the slate may be clean for various state purposes, that is not necessarily so for purposes of removal of an illegal alien, such as [Bogle]." *Id.* at 1106. Because the conditional discharge statute required Bogle to plead guilty to or be found guilty of possessing marijuana, and because it imposed a punishment for that guilt, "the federal definition of conviction is satisfied regardless of the rehabilitative purpose" of the conditional discharge statute. *Id.* at 1108.

**B. The circumstance-specific approach applies to the thirty-gram limit of the personal-use exception.**

Bogle contends that the categorical or modified categorical approach, rather than the circumstance-specific approach, applies to the thirty-gram limit of the personal-use exception. We first note that his position has been rejected by the BIA and the other circuits to have addressed this issue. *See Matter of Dominguez-Rodriguez*, 26 I. & N. Dec. 408, 410–14 (BIA 2014); *Matter of Davey*, 26 I. & N. Dec. 37, 39 (BIA 2012); *Cardoso de Flores v. Whitaker*, 915 F.3d 379, 382–85 (5th Cir. 2019) (per curiam); *Mellouli v. Holder*, 719 F.3d 995, 1001 (8th Cir. 2013), *rev'd on other grounds*, 135 S. Ct. 1980 (2015). Here we defer to the BIA's sound interpretation that the personal-use exception calls for an inquiry into the specific circumstances surrounding the offense and decline to create a conflict with our sister circuits.

Courts "*generally* employ a 'categorical approach' to determine whether [a] state offense is comparable to an offense listed in the INA," *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (emphasis added), and "[*i*]*n the main*, § 1227(a)(2)(B)(i) . . . has no . . . circumstance-specific thrust," *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 n.3 (2015) (emphasis added). However, the Supreme Court has never held that the categorical approach must be applied to the personal-use exception of § 1227(a)(2)(B)(i), and we have never held that the categorical approach applies to the exception in its entirety. Although we applied the modified categorical approach in *Medina v. Ashcroft*, 393 F.3d 1063 (9th Cir. 2005), in determining that a conviction for attempting to be under the influence of a controlled substance (THC-carboxylic acid) was a match for the *possession for one's own use* of marijuana (the type of

offense covered by the personal-use exception), *id.* at 1065–66,[3] we did not address the exception's thirty-gram limit except to note that "[n]othing in the statutory definition of [the] crime or in the specified documents negates the possibility (indeed the likelihood) that Medina's conviction resulted from the personal use of marijuana in an amount less than 30 grams," *id.* at 1066. And in *Medina*, unlike here, it was undisputed that the petitioner had used or possessed fewer than thirty grams of marijuana. *Id.* at 1066 n.9.

We afford *Chevron* deference to published decisions of the BIA that interpret the INA. *Diaz-Quirazco v. Barr*, 931 F.3d 830, 838 (9th Cir. 2019). If Congress has not spoken to the particular issue or the statute is ambiguous, and if the BIA's interpretation is reasonable, we will accept that interpretation, even if it differs from what we believe to be the *best* interpretation. *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1073 (9th Cir. 2016).

The BIA held in *Matter of Davey* that the circumstance-specific approach applies to the personal-use exception. 26 I. & N. Dec. at 39; *see also Matter of Dominguez-Rodriguez*, 26 I. & N. Dec. at 410–14 (applying *Matter of Davey* in the removal context). Section 1227(a)(2)(B)(i) does not unambiguously direct us to use either the categorical approach or the circumstance-specific approach in determining whether Bogle's offense involved thirty grams or less of marijuana. Therefore, we will defer to

---

[3] Our decision in *Medina* applying the modified categorical approach instead of the circumstance-specific approach appears to conflict with the Supreme Court's later decision in *Nijhawan v. Holder*, 557 U.S. 29 (2009). *See infra* p. 18–19. We leave that issue for another day, as our case relates only to the thirty-gram limit, and not how to determine whether the offense of conviction was an offense involving possession for one's own use.

*Matter of Davey* and apply the circumstance-specific approach, so long as doing so is reasonable.

The Supreme Court's decision in *Nijhawan v. Holder*, 557 U.S. 29 (2009), discusses the conditions that call for a circumstance-specific inquiry. As the name suggests, the circumstance-specific approach applies when the statute "refers to the specific circumstances in which a crime was committed," rather than "generic crimes." *Id.* at 38. One indication that a statute refers to specific circumstances rather than generic crimes is statutory language focusing on "the conduct involved *in*" rather than "the elements *of*" an offense. *Id.* at 39 (quotation marks omitted). Another indication is a scarcity of state and federal offenses categorically matching the INA provision at issue, or an imbalance where only some states' offenses are a categorical match, so that applying the categorical approach would leave the provision with little, if any, meaningful application or would cause the provision to apply in a limited and haphazard manner. *Id.* at 39–40.

The statutory language of the personal-use exception explicitly focuses on the conduct involved in an offense, not its elements. The exception applies to a "single offense *involving* possession for one's own use of 30 grams or less of marijuana." 8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added). While Bogle points to no state or federal marijuana offense with a threshold of thirty grams, the government identifies two, *see* Miss. Code Ann. § 41-29-139(c)(2); 35 Pa. Cons. Stat. § 780-113(a)(31), and our research has revealed no others, meaning that applying the categorical approach to the thirty-gram limit would render the personal-

use exception meaningless or, at best, haphazard in application.[4]

Therefore, the BIA's decision in *Matter of Davey* is consistent with the Supreme Court's analysis in *Nijhawan* and accordingly, is reasonable. *See Cardoso de Flores*, 915 F.3d at 382–83 ("[W]e conclude that the BIA's position that the personal-use exception requires a circumstance-specific inquiry is a reasonable interpretation of the INA; we therefore defer to the BIA. The Supreme Court's analysis in [*Nijhawan*] all but compels this result." (citation omitted)). Indeed, it is hard to see how a court could ever determine whether an "offense involv[ed] possession for one's own use of 30 grams or less of marijuana" *without* looking at the specific circumstances of the particular offense. We will defer to the BIA as to the thirty-gram limit of the personal-use exception and evaluate whether the circumstances specific to this case are sufficient to meet the government's burden of proving by clear and convincing evidence that Bogle possessed more than thirty grams of marijuana.

## C. The circumstances specific to this case clearly establish that Bogle knowingly possessed more than thirty grams of marijuana.

Bogle argues that because his conviction was for the possession of more than one ounce (28.35 grams) of

---

[4] The same would have been true when the personal-use exception was first added to the INA in 1990, as noted by the Fifth Circuit in *Cardoso de Flores*. In 1990, "the federal simple-possession statute" did not "distinguish between possession of greater or less than 30 grams," and although a "majority of states and the District of Columbia" did "carve[] out a lower offense for simple possession" of a small amount of marijuana, the threshold was twenty-nine grams, not thirty. *Cardoso de Flores*, 915 F.3d at 384.

marijuana, he *could* have possessed between 28.36 and thirty grams—qualifying him for the personal-use exception. He insists that the police report cannot on its own establish that he knowingly possessed more than thirty grams, even under the circumstance-specific approach. Such an argument both misreads the record and misunderstands the circumstance-specific approach. The police report is not the only part of the record establishing that Bogle knowingly possessed more than thirty grams of marijuana.

Applying the circumstance-specific approach requires us to consider "the particular circumstances in which an offender committed the crime on a particular occasion." *Nijhawan*, 557 U.S. at 38. This differs from the categorical approach with its "focus on the formal elements of generic offenses," *Matter of Davey*, 26 I. & N. Dec. at 39, and the modified categorical approach, under which the court can consider only certain documents, typically not including a police report, *Almazan-Becerra*, 537 F.3d at 1097.

Although the dissent concurs in our holding that the circumstance-specific approach applies to the thirty-gram limit of the personal use exception, Dissent at 32, the dissent's application of the circumstance-specific approach confuses the requirements of the circumstance-specific approach with the requirements of the categorical and modified categorical approaches.[5] Most notably, the dissent

---

[5] For example, the dissent relies on the Supreme Court's recent decision in *Pereida v. Wilkinson*, 141 S. Ct. 754 (2021), for the proposition that "the threshold factual question is *which acts formed the basis of the alien's prior conviction*. . . . Accordingly, the government may only deem Bogle removable after it has proven that the *conviction itself*, *i.e.*[,] Bogle's plea, involved 30 grams of marijuana or more." Dissent at 34–35 (quotation marks, citation, and alterations omitted). But in *Pereida*, the Court was applying the categorical approach, which

criticizes that "[n]othing in our record indicates that Bogle admitted or stipulated that a specific quantity of marijuana formed the basis of his only qualifying prior conviction, that evidence was presented to the Georgia court concerning the

---

"implicates two inquiries—one factual (what was [the petitioner's] crime of conviction?), the other hypothetical (could someone commit that crime of conviction without [satisfying the INA's offense requirement]?)." *Pereida*, 141 S. Ct. at 762. The Court had determined that only certain offenses covered by a divisible statute of conviction were categorical matches for the INA offense requirement at issue (crime involving moral turpitude), so the factual determination of *which* offense the petitioner stood convicted of was especially important. *See id.* at 762–63. Here, in contrast, we know Bogle's crime of conviction—possession of more than one ounce of marijuana. Thus, having answered the "threshold question," we can move on to the second inquiry, which under the circumstance-specific approach, is not whether the "*conviction itself*, i.e.[,] Bogle's plea, involved 30 grams of marijuana or more"—it involved only an ounce or more—but whether the *circumstances specific to this case* show that Bogle *possessed* thirty grams of marijuana or more. *Compare id.* at 762, *with Nijhawan*, 557 U.S. at 32.

The dissent also relies on *Moncrieffe v. Holder*, 569 U.S. 184 (2013), for the proposition that "[i]n evaluating Bogle's conviction, precedent dictates that we *must* presume that the conviction rested upon nothing more than the least of the acts criminalized." Dissent at 35 (emphasis added) (quotation marks, citation, and alteration omitted). Yet again, the dissent confuses the circumstance-specific approach with the categorical approach. The Court in *Moncrieffe* was applying the categorical approach and thus appropriately stated in full: "Because we examine what the state conviction necessarily involved, *not the facts underlying the case*, we must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." 569 U.S. at 190–91 (emphasis added) (quotation marks, citation, and alteration omitted). Of course, this principle does not apply to the circumstance-specific approach, which is distinct from the categorical approach precisely because it requires us to examine not only the state conviction, but also the facts underlying the case. *See Nijhawan*, 557 U.S. at 41–42.

quantity of marijuana, or that the Georgia court made any finding as to a quantity of marijuana greater than an ounce." Dissent at 33. Even assuming that to be true,[6] *Nijhawan* expressly did not import into the circumstance-specific approach the modified categorical approach's requirement that a "jury verdict, or a judge-approved equivalent, embody a determination" of the fact at issue. 557 U.S. at 41. Unlike the categorical or modified categorical approaches, the circumstance-specific approach by its very nature "permit[s a petitioner] to be deported on the basis of circumstances that were not before judicially determined to have been present and which he may not have had an opportunity, prior to conviction, to dispute."[7] *Id.* (emphasis omitted).

---

[6] As explained in detail in the fact section, Bogle never challenged the quantity of marijuana actually recovered, and in several parts of his testimony, he essentially admitted to it.

[7] We did not hold otherwise in *Fuentes v. Lynch*, 788 F.3d 1177 (9th Cir. 2015) (per curiam). In *Fuentes*, the BIA had relied on (1) the petitioner's indictment and judgment and (2) the petitioner's presentence report (PSR) to conclude that the petitioner had conspired to launder more than $10,000, making him an aggravated felon. *Id.* at 1182–83. We held that it was an error for the BIA to rely on the indictment and judgment because the petitioner did not actually plead guilty to conspiring to launder more than $10,000, but that the error was harmless because the PSR independently established the monetary threshold by clear and convincing evidence. *Id.* Thus, *Fuentes* stands for the simple proposition that where, as here, a petitioner's judgment of conviction does not itself establish the fact at issue, courts may look to other documents to determine the circumstances particular to the petitioner's offense. And although the PSR in *Fuentes* stated that the petitioner had stipulated to the amount of laundered funds recorded therein, *id.* at 1183, a stipulation is not necessary for a document to satisfy the government's burden of clear and convincing evidence, *see, e.g.*, *Cardoso de Flores*, 915 F.3d at 386.

Of course, this does not mean that a petitioner does not have due process protections under the circumstance-specific approach. First, the Supreme Court still instructs that the circumstance-specific approach requires "fundamentally fair procedures, including procedures that give an alien a fair opportunity to dispute a Government claim." *Id.* Here, the BIA's reliance on the police report along with other evidence and testimony was not fundamentally unfair. *Cf. Matter of Grijalva*, 19 I. & N. Dec. at 722 (explaining that usage of a police report is fundamentally unfair if, for example, the petitioner "made statements involuntarily to the officers who arrested him, or [if] the police officers acted egregiously in seizing evidence"). Bogle had a fair opportunity (actually several such opportunities) to dispute the quantity of marijuana found in the car he was driving, but he chose not to do so. *See Nijhawan*, 557 U.S. at 41; *Arias-Minaya v. Holder*, 779 F.3d 49, 54 (1st Cir. 2015) ("As long as the nature and stage of the proceedings are taken into account . . . the case law does not categorically preclude the agency from considering a police report simply because the arrest detailed therein has not resulted in a conviction.").

Second, even under the circumstance-specific approach, the government still must prove to the IJ and BIA that the quantity of marijuana exceeded thirty grams by clear and convincing evidence.**[8]** Although this is an "exacting

---

**[8]** The dissent states that "[t]o affirm the BIA on this record would allow immigration authorities to . . . disregard Bogle's presumption of innocence as to any conduct beyond the scope of his plea." Dissent at 46. However, *Nijhawan* reminds us that "a deportation proceeding is a civil proceeding in which the Government does not have to prove its claim 'beyond a reasonable doubt,'" but by clear and convincing evidence. 557 U.S. at 42. Therefore, under the circumstance-specific approach, the government may deport aliens "on the basis of circumstances that were

standard," Dissent at 33, the circumstances specific to this case can easily satisfy the burden. At the very least, we do not "find that any rational trier of fact would be *compelled* to conclude that the proof did *not* rise to the level of clear and convincing evidence," thus requiring reversal under our review for substantial evidence. *Barikyan v. Barr*, 917 F.3d 142, 146 (2d Cir. 2019) (emphasis added) (citation omitted); *see Nakamoto v. Ashcroft*, 363 F.3d 874, 881–82 (9th Cir. 2004) (same).[9]

As a starting point, we agree with the IJ and the BIA that the police report here is "probative" and "reliable." Even if unpublished decisions by other circuits were binding on this court, the unpublished Tenth Circuit decision cited by the dissent states that "certain features of the police report itself—such as its level of detail, internal consistency, and quality" are relevant to "the probable accuracy of the relevant information contained therein." *United States v. Padilla*, 793 F. App'x 749, 757 (10th Cir. 2019). The police report here is detailed, is internally consistent, and records *observations of fact* rather than the officers' conclusions. It states that the "green leafy material" found in the three bags "tested positive for marijuana," and provides the precise weight of each bag: 446.6 grams, 450.5 grams, and 438.8 grams. Given that Bogle did not specifically contest the measurements of quantity in the report, holding such a report

_____

not before judicially determined to have been present" beyond a reasonable doubt without undermining a petitioner's presumption of innocence. *Id.* at 41–42 (emphasis omitted).

[9] We are not reviewing for clear and convincing evidence but are rather reviewing whether *substantial* evidence supports the *BIA's* factual determination that the government has proven the quantity of marijuana by clear and convincing evidence—an important distinction. *See Nakamoto*, 363 F.3d at 881–82.

to be insufficient would be essentially the same as holding that *no* police report is sufficient, standing alone, to demonstrate that a petitioner possessed more than thirty grams of marijuana.

We will not adopt such a categorical rule,[10] as holding that *no* police report could *ever* be sufficient, standing alone,

---

[10] The dissent joins us "in rejecting a categorical rule that a police report can never be sufficient to meet the government's burden in removal proceedings." Dissent at 37. But the dissent insists that *this* police report is not enough because it "contains no information indicating that Bogle was aware there was marijuana in the compartment in the trunk before it was discovered by officers." Dissent at 39. That is incorrect. First, as described above, the police report offers direct evidence of Bogle's knowledge by describing his outright confession "that he knew that drugs [were] in the car and only did it to make some extra money." It would, of course, be unlikely that Bogle would be "mak[ing] some extra money" by transporting the dissent's hypothetical twenty-nine grams of marijuana as opposed to the actual 1335 grams recovered from the car Bogle was driving. Second, the report offers circumstantial evidence of Bogle's knowledge, including that there was a "very strong odor of marijuana coming from inside of the car," that Bogle was driving a rental car in another person's name "for a friend," and that he was "extremely nervous and breathing heavy . . . [with] his carotid artery pulsating on the right side of his neck." Although Bogle *could* have been "extremely nervous" for reasons other than his knowledge that the car contained three pounds of marijuana (as opposed to twenty-nine grams), the police report's description of his nervous reaction is hardly "no information" indicating Bogle's awareness of the marijuana. Dissent at 39.

The dissent also complains that the report is uncorroborated and thus incomplete—for instance, because it is not accompanied by photos of the marijuana (which photos, of course, would not even address the dissent's chief concern about the lack of proof of Bogle's knowledge). Dissent at 39–40. But the conclusion that a police report is insufficient *because* it is uncorroborated is synonymous with saying that a police report is insufficient evidence because it is the only evidence—the categorical rule that we and the dissent both reject. This police report is detailed and

would be directly contrary to the Supreme Court's instruction to consider the particulars of each case (though we continue to emphasize that the police report did *not* stand alone here). Adopting such a rule would also impose a higher evidentiary standard for removals under § 1227(a)(2)(B)(i) than for certain criminal convictions, which must be proven beyond a reasonable doubt. In *United States v. Irion*, 482 F.2d 1240 (9th Cir. 1973), *cert. denied*, 414 U.S. 1026, we held that a "police report, *the only evidence at the trial*," was sufficient to uphold defendants' convictions for importation and possession of marijuana with intent to distribute. *Id.* at 1245 (emphasis added) (quotation marks and footnote omitted). "[I]n view of [the police report's] unchallenged and uncontradicted testimony that the substance was in fact marihuana" and because "there was *no suggestion of any question* regarding the nature of the substance" until the "issue was first raised on appeal," the defendants' "untimely challenge . . . to the sufficiency of the evidence" necessarily failed. *Id.* (emphasis added).

The same logic should apply to Bogle, who, as noted, has *never* disputed the police report's record of the quantity of marijuana found in his car, even on appeal. In fact, Bogle's failure to challenge that aspect of the police report is just one of the many circumstances we consider *in addition to* the police report itself.

In looking at whether proceedings were fundamentally fair for purposes of the circumstance-specific approach, courts may consider whether a petitioner had "ample opportunity to challenge" the evidence against him but did

---

explicit, and records observations of fact rather than mere conclusions. Thus, the dissent's conclusion that this police report is insufficient is tantamount to saying that no police report can ever be sufficient.

not. *Fan Wang v. Att'y Gen.*, 898 F.3d 341, 350 (3d Cir. 2018); *see also United States v. Gonzalez-Medina*, 757 F.3d 425, 432 (5th Cir. 2014); *Hamilton v. Holder*, 584 F.3d 1284, 1287 (10th Cir. 2009). We thus consider Bogle's failure to ever challenge the amount of marijuana recorded in the police report, despite his adamant protests that he did not know there was marijuana in the vehicle.

Courts may also consider whether there was an "absence of any conflicting evidence." *Nijhawan*, 557 U.S. at 43; *see also Kaplun v. Att'y Gen.*, 602 F.3d 260, 266 (3d Cir. 2010). We thus consider Bogle's reliance on the theoretical argument that he *could* have possessed somewhere between 28.36 and thirty grams, rather than any offer of proof that he *did* possess such an amount.

Courts may also consider whether the petitioner admitted the evidence against him. *See Bianco v. Holder*, 624 F.3d 265, 273 (5th Cir. 2010). We thus consider Bogle's testimony in 2017 that just one of the bags recovered by the police contained "[n]othing more than say 40, *40 grams*," as well as the following admission from his testimony in 2019: "*I admit* there was marijuana in the car, and *I admit* to it but did I *knowingly* get in the car and drove it *knowing* that marijuana was there, no, I did not. I just did not, Your Honor."

Finally, courts may consider whether the reported amount exceeded the statutory cutoff by a large or small degree. *See Barikyan*, 917 F.3d at 147. We thus consider the fact that the police report stated there were more than *1300* grams of marijuana in Bogle's car—*1270 grams above the personal-use exception's limit*.

Viewing those circumstances together, the evidence here, including the police report, clearly establishes that

Bogle possessed more than thirty grams of marijuana.  Only in an *Alice in Wonderland* world[11] could we overturn the IJ and BIA determinations, on the ground that the *police report alone* is not clear and convincing evidence, all the while ignoring the other evidence and specific circumstances in the record—including that Bogle never challenged the quantity of marijuana actually recovered, and indeed, essentially admitted to it.

Nonetheless, the dissent urges us to adopt that counterintuitive result under the hypothetical scenario that Bogle actually did have a strong case that he did not know about the marijuana in the trunk.[12]  Thus, the dissent argues, "[o]ne plausible reading of the record is that the prosecutor recognized that Bogle had a potentially valid defense to any charge related to the marijuana in the trunk, and exercised prosecutorial discretion to obtain a plea to something less than that reliant on the quantity of marijuana found in the compartment in the trunk"—possession, rather than possession with intent to distribute.  Dissent at 43, 44.  After all, the dissent notes, "Bogle admits and the police report itself suggests that there was some marijuana in the cabin.

---

[11] *See United States v. Battle*, 927 F.3d 160, 163 n.2 (4th Cir. 2019) (describing the categorical approach as an "*Alice in Wonderland* path" because under that "absurd" approach, we "must look not to what [petitioner] actually did" but instead, "must turn away from the facts of this case and consider . . . situations that have nothing to do with [petitioner]").  Unlike the *Alice in Wonderland* path of the categorical approach, we are supposed to look to what Bogle actually did under the circumstance-specific approach.

[12] Making him the victim of not one but *two* run-ins with law enforcement in which he was transporting somebody else's marijuana.  *See supra* n.1.

The officer noted leafy flakes on the console, and the odor of marijuana."  Dissent at 43 n.8.

It is unclear where in the record the dissent finds this compelling story of the innocent drug user who knowingly possessed between 28.36 and thirty grams in the passenger compartment of the vehicle he was driving, all the while blissfully ignorant of the 47.12 *ounces* of marijuana in the vehicle's trunk.  And certainly, Bogle has never suggested that this hypothetical came to pass in his case.  *See Barikyan*, 917 F.3d at 146 (requiring petitioner to "offer[] . . . evidence that [proposed] hypotheticals came to pass in his case" even where the government had the burden of proof by clear and convincing evidence).    Therefore, although the record supports that there were *flakes* of marijuana in the passenger compartment, we will not invent *28.36 grams* of flakes (but no more than thirty) to allow Bogle to avoid the immigration consequences of his Georgia conviction.**[13]**  Where, as here, "the record before us contains no plea agreement, and certainly not one which explicitly spells out the [quantity of marijuana] to which [Bogle] pleaded guilty," we will not assume that Bogle pleaded guilty to possessing some lower quantity of marijuana as "part of an explicit bargain between [him] and the Government" merely because "the Government *could* have charged [him] with a [more severe] crime[] but did not."  *Ku v. Att'y Gen.*, 912 F.3d 133, 142 (3d Cir. 2019) (emphasis added).  "[P]ure conjecture" cannot sever the tie between Bogle's conviction and the quantity of marijuana recorded in the police report, "[a]bsent a clear and

---

**[13]**  According to at least one study, there are approximately 89 average joints in one ounce of marijuana.  *How Much Weed Is in a Joint?  Pot Experts Have a New Estimate*, N.Y. Times (July 14, 2016), https://www.nytimes.com/2016/07/15/science/how-much-weed-is-in-a-joint-pot-experts-have-a-new-estimate.html.

unmistakable indication of [the government's stipulation to some lesser quantity] in a written plea agreement."**14** *Id.*; *see*

---

**14** The dissent's attempts to distinguish *Ku* are unavailing. First, the dissent highlights that in *Ku*, there was a judgment of conviction that included a total loss determination well in excess of the relevant $10,000 threshold, as well as a restitution order in that amount. Dissent at 48. Again, the dissent confuses the modified categorical approach with the circumstance-specific approach, which does not require a "jury verdict, or a judge-approved equivalent, [to] embody a determination" of the fact at issue, and which "permit[s a petitioner] to be deported on the basis of circumstances that were not before judicially determined to have been present." *Nijhawan*, 557 U.S. at 41 (emphasis omitted).

Second, the dissent suggests that Bogle's invented plea agreement—in which Bogle was convicted of 28.36 grams but not more than thirty—is not "pure conjecture" because it is "supported both by [Bogle's] assertion of a potentially valid affirmative defense, and the fact that the prosecutor ultimately reconsidered, and dropped, the original higher charge." Dissent at 48–49. That is wrong too. *Ku* held that "absent a clear and unmistakable indication of [the amount at issue] in a written plea agreement," or any other evidence indicating that a petitioner pleaded to a lesser amount than the amount clearly established by the government's evidence, a court should not assume that a petitioner pleaded guilty to some lesser amount based only "on the fact that the Government could have charged [the petitioner] with [additional] crimes but did not." 912 F.3d at 142 (contrasting *Alaka v. Att'y Gen.*, 456 F.3d 88 (3d Cir.), *as amended* (Aug. 23, 2006), *and overruled by Bastardo-Vale v. Att'y Gen.*, 934 F.3d 255 (3d Cir. 2019) (en banc), on the grounds that, in *Alaka*, the precise amount at issue was specified in a plea agreement). Here, Bogle's "assertion of a potentially valid . . . defense" is not a "clear and unmistakable indication" that he pleaded guilty to possessing something less than thirty grams of marijuana, nor was his current supposed view of the facts incorporated into a written plea agreement. Therefore, because neither he nor the dissent points to any other evidence indicating that he pleaded guilty to a lesser amount of marijuana than the amount clearly established by the government's evidence, we cannot assume that Bogle pleaded guilty to less than thirty grams of marijuana based only on "the fact that the Government could have charged"—and initially did charge—additional crimes but ultimately did not. *Id.*

*Nijhawan*, 557 U.S. at 42 ("[A]mount must be tethered to offense of conviction; amount cannot be based on acquitted or dismissed counts or general conduct[.]" (citation omitted)).

To hold otherwise would be both legally erroneous and practically unjust. It would come at the expense of the immigration system's search for truth. *See Iliev v. INS*, 127 F.3d 638, 643 (7th Cir. 1997) ("The Immigration Judge has broad discretion . . . in order to ascertain the truth."); *see also Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998) (same). In so doing, it would bring us back to the long-disfavored "sporting theory" of justice, *see Brady v. Maryland*, 373 U.S. 83, 90–91 (1963), which causes even "the most conscientious judge to feel that he is merely to decide the contest . . . according to the rules of the game, not to search independently for truth and justice," Roscoe Pound, *The Causes of Popular Dissatisfaction with the Administration of Justice*, 29 Ann. Rep. Am. Bar Ass'n 395, 405 (1906). And it would come "at the potential cost of substantial expenditures of agency time," *Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 31 (1961), and at a cost to the rule of law itself, *see* Pound, *supra*, at 406 ("If the law is a mere game, neither the players who take part in it nor the public who witness it can be expected to yield to its spirit when their interests are served by evading it.").

We will not condone such a result. Today's appeal is not a game, and we search for the truth. Here that means carefully evaluating the circumstances specific to Bogle's case, and that evaluation leads to only one conclusion: Bogle's conviction involved more than thirty grams of marijuana.

Accordingly, we will not grant review of Bogle's order of removal for committing a controlled substance offense. Nor will we grant review of the IJ's denial of Bogle's application for cancellation of removal. Barring a colorable constitutional claim[15] or question of law,[16] 8 U.S.C. § 1252(a)(2)(D), we lack jurisdiction to review such a discretionary decision, *id.* § 1252(a)(2)(B)(i). The temporary stay of removal remains in place until issuance of the mandate. The motion for a stay of removal is otherwise denied.

**PETITION DENIED.**

---

PEARSON, District Judge, dissenting:

I join my colleagues in concluding that Bogle's conditional discharge was a conviction under the INA, that the circumstance-specific approach applies to the thirty-gram limit of the personal use exception, and in rejecting a

---

[15] Bogle seems to make a procedural due process argument based on the IJ's reliance on the police reports from both Arizona and Georgia, but the claim is not colorable. "An alien's right to procedural due process is violated only if [1] the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case, and [2] the alien proves that the alleged violation prejudiced his or her interests." *Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016) (quotation marks and citation omitted). As already explained, it was not fundamentally unfair for the IJ to consider the police report.

[16] Bogle contends that the IJ erred by applying the stop-time rule to his case, but the claim is not colorable. Bogle's argument relies only on our holding in *Nguyen v. Sessions*, 901 F.3d 1093 (9th Cir. 2018), which was abrogated by the Supreme Court's subsequent holding in *Barton v. Barr*, 140 S. Ct. 1442 (2020).

categorical rule that a police report can never be sufficient to meet the government's burden of clear and convincing evidence. Our agreement ends there. I do not agree that the police report in this case satisfies the government's burden of clear and convincing evidence.

The circumstance-specific approach permits courts to probe the factual underpinnings of a prior qualifying conviction. It does not relieve the government of its evidentiary burden when an alien admits to earlier, unrelated, criminal conduct, nor does it permit removal based on intuition and guesswork. Nothing in our record indicates that Bogle admitted or stipulated that a specific quantity of marijuana formed the basis of his only qualifying prior conviction, that evidence was presented to the Georgia court concerning the quantity of marijuana, or that the Georgia court made any finding as to a quantity of marijuana greater than an ounce. The majority's decision regarding the government's satisfaction of its evidentiary burden is belied by the record and contrary to established precedent. Therefore, I respectfully dissent.

## I. The Government's Burden

To prove that Bogle's conviction was one for possessing more than 30 grams of marijuana, the government must present clear and convincing evidence. That is an exacting standard. 8 U.S.C. § 1229a(c)(3)(A); *Cortez-Acosta v. INS*, 234 F.3d 476, 480–81 (9th Cir. 2000) ("very demanding"); *see also Matter of Davey*, 26 I. & N. Dec. at 41 ("[A]n inconclusive record is not sufficient."). Even if the evidence suggests that Bogle *probably* possessed more than 30 grams, "'probably' is a lower standard than 'clear, unequivocal, and convincing.'" *Cortez-Acosta*, 234 F.3d at 482 (citations omitted). "[W]e affirm *only* if 'the [agency] has successfully carried this heavy burden of clear, unequivocal, and

convincing evidence.'" *Hernandez-Guadarrama v. Ashcroft*, 394 F.3d 674, 679 (9th Cir. 2005) (citations omitted, emphasis added) (alteration in original).

The Supreme Court recently reminded us that "like any other fact, the party who bears the burden of proving [the crime of conviction in immigration proceedings] bears the risks associated with failing to do so." *Pereida v. Wilkinson*, 141 S. Ct. 754, 765 (2021). Because courts resolve factual disputes regarding the crime of conviction "only by reference to evidence, . . . [the] statutory allocation of the burden of proof will sometimes matter a great deal." *Id*. at 764.[1]

The question on which the government bears the burden of clear and convincing evidence is not, as the majority implies, how much marijuana was in the rental car. Rather, "the threshold factual question [is] *which [acts] formed the basis of the alien's prior conviction*." *Pereida*, 141 S. Ct. at

---

[1] Here, the government bears a higher burden than the alien in *Pereida* — clear and convincing rather than a mere preponderance. *Pereida* addressed an alien's burden to demonstrate eligibility for *cancellation* of a concededly proper order of removal, subject to a preponderance of the evidence standard. 8 U.S.C. § 1229a(c)(4)(A) ("An alien applying for relief or protection from removal has the burden of proof[.]"); §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(I) (A noncitizen is ineligible for this discretionary relief, however, if, among other things, he has "been convicted of " a "crime involving moral turpitude."); 8 C.F.R. § 1240.8(d) (If the evidence suggests that a ground "for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply."). Unlike Pereida, Bogle challenges whether the government has proven he is removable.

765 (some emphasis added).[2]   The drug quantity at issue "must be tied to the specific counts covered by the conviction." *Nijhawan*, 557 U.S. at 42 (citations and quotation marks omitted).   In determining a quantity to be proven under the circumstance-specific approach, the "amount must be tethered to offense of conviction[,]" and "cannot be based on acquitted or dismissed counts or general conduct[.]" *Id*. (quoting *Alaka v. Att'y Gen. of the United States,* 456 F.3d 88, 107 (3rd Cir. 2006), *overruled on other grounds by Bastardo-Vale v. Att'y Gen. United States of America*, 934 F.3d 255 (3rd Cir. 2019)).

Accordingly, the government may only deem Bogle removable after it has proven that the *conviction itself*, *i.e.* Bogle's plea, involved 30 grams of marijuana or more.

In evaluating Bogle's conviction, precedent dictates that we "must presume that the conviction rested upon nothing more than the least of the acts criminalized[.]" *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (citation and quotation marks omitted).[3]   We are legally compelled to

---

[2] *See also Nijhawan v. Holder*, 557 U.S. 29, 32 (2009) ("[I]n order to determine whether a *prior conviction* is for the kind of offense described, the immigration judge must look to the" circumstances in which an offender committed the crime.) (emphasis added); *Medina v. Ashcroft*, 393 F.3d 1063, 1065 n.5 (9th Cir. 2005) ("The government bears the burden of establishing that the alien's *conviction* does not fall within the [personal-use exception].") (emphasis added).

[3] The majority opines that this is only true in cases applying the categorical approach.   Opinion at 20–22 n.5.   While this concept originated in cases applying the categorical approach, its application is not as limited as the majority suggests.   The categorial approach makes such a presumption irrebuttable.   The modified categorial and circumstance-specific approaches provide frameworks under which the party with the burden of proof can move the needle.   Certainly, the

faithfully follow precedent.  In doing so, we must conclude that Bogle is removable only if the government has met its burden of proof.  On the record before us, we begin that analysis with the presumption that Bogle's conviction is for less than 30 grams.  *Id*.  "Since the Government must show the [quantity] by clear and convincing evidence, uncertainties caused by the passage of time are likely to count in the alien's favor."  *Nijhawan*, 557 U.S. at 42; *see Pereida*, 141 S. Ct. at 765.

## II.  Relevant Facts

According to the police report, Bogle was arrested while he was driving a rental car that he did not rent and was not authorized to drive.  Bogle told the officer he had been hired, and given use of the car, to pick up a female companion of one of his friends.  The officer claims he smelled marijuana inside the vehicle, and then conducted a search.  The officer states that he "saw several green leafy flakes lying on the driver's seat and console[,]" and proceeded to search the trunk, where he found three gallon-sized Ziploc bags "in the firewell of the vehicle located behind the inner carpet lining" full of material that later tested positive for marijuana.

It is those three bags, alone, that make up the 2.94 pounds of marijuana the government and majority contend form the basis for Bogle's qualifying conviction.  The police report does not indicate whether a more thorough search of the car's cabin was conducted or whether the "leafy flakes" in the passenger compartment may have resulted from

---

majority does not dispute that proof of conviction, alone, is proof only of the least of the acts criminalized.  Opinion at 22 n.7.  It, however, has provided no authority permitting it to begin its analysis at some alternate weight.

consumption prior to the officer's arrival. Although the record contains some conflicting information on this point, Bogle has contended throughout years of protracted proceedings that he was unaware that there were three large bags of marijuana in the trunk. Bogle did acknowledge that there was a smaller bag of marijuana in the car, weighing no more than 40 grams. This, however, is not documented in the police report.

The majority opinion regarding the quantity involved rests on two key features of the record: the police report, and Bogle's failure to challenge that there was about three pounds of marijuana in the trunk of the car. Neither of these factors, separately or taken together, supports the conclusion that the government has proven Bogle's conviction falls outside the personal use exception.

## III. The Police Report

I join my colleagues in rejecting a categorical rule that a police report can never be sufficient to meet the government's burden in removal proceedings.[4]

---

[4] I disagree with the majority, however, that such a report could be sufficient because, once, nearly 50 years ago, "we held that a 'police report, *the only evidence at trial*,' was sufficient to uphold defendants' convictions for importation and possession of marijuana with intent to distribute." Opinion at 25 (quoting *United States v. Irion*, 482 F.2d 1240, 1245 (9th Cir. 1973) (emphasis added by majority)). To begin with, the quote is misleading. *Irion* was a bench trial, the police officers had previously testified at a suppression hearing, and the transcript of that hearing, as well as evidence submitted there, were discussed by the parties and considered by the court, in addition to the police report. 482 F.2d at 1246 n.13. The majority uses its interpretation of *Irion* to argue that a categorical rule would "impose a higher evidentiary standard for removals . . . than for certain criminal convictions, which must be proven

When evaluating police reports, a case-by-case analysis is the appropriate approach. *United States v. Padilla*, 793 F. App'x 749, 757 (10th Cir. 2019). An individualized analysis allows the immigration judge, or a court, to independently assess a report's probative value, determine whether its admission would be fundamentally fair, *and decide what weight to ascribe an admitted report*.

> [B]ecause police reports—as a category of evidence—are not inherently reliable, it follows that courts cannot resolve a disputed [] fact simply by assuming that information contained in a police report meets the due-process "reliability floor." [*United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013).] Instead, [] courts must make a case-by-case reliability determination. In so doing, they may examine the record, as a whole, to discern whether there is additional evidence to corroborate sufficiently the relevant information that the police report is being

---

beyond a reasonable doubt." Opinion at 25. Foremost, this argument reveals a flaw in the majority's logic — it is not that immigration officials must demonstrate *factual guilt* by clear and convincing evidence. Rather, they must prove the *circumstances of a conviction* by that standard. *See supra* Section I. Furthermore, the majority fails to note that the police report in *Irion* was found to be sufficient evidence because it was offered by stipulation, in lieu of officer testimony. *Irion*, 482 F.2d at 1245 n.10. Had the sufficiency of the report been challenged at the close of evidence, the government "would no doubt have been permitted to reopen its case and call the chemist as a witness or introduce his written report into evidence[.]" *Id*. at 1245. Absent an enforceable stipulation, such a trial tactic would not conform with the Federal Rules of Evidence, nor any rational understanding of the Confrontation Clause. *See, e.g,. Bullcoming v. New Mexico*, 564 U.S. 647, 660 (2011); *Davis v. Washington,* 547 U.S. 813 (2006).

offered to establish.  They also may find that certain features of the police report itself— such as its level of detail, internal consistency, and quality—independently support the probable accuracy of the relevant information contained therein.

*Id.*

In its evaluation of the police report, the majority conflates the standards for admission of evidence in an immigration proceeding with the government's ultimate burden of proof.  While the admission and limited consideration of the police report may not have been "fundamentally unfair," the uncorroborated and unverified police report here does not meet the government's burden of "clear and convincing" evidence.  As discussed below, Bogle has asserted the defense of lack of knowledge.  The report contains no information indicating that Bogle was aware there was marijuana in the compartment in the trunk before it was discovered by officers.  There are also material discrepancies between the crimes for which Bogle was arrested and the charge to which he ultimately pled guilty, calling the report's probative value into question.

At best, the police report is incomplete.  It mentions a drug quantity without corroboration. *Cf. Matter of Grijalva*, 19 I. & N. Dec. at 722–23 (noting that the laboratory tested the substance and verified it was marijuana); *Matter of Higgs*, 2012 WL 3276581, at *2 (B.I.A. July 24, 2012) (unpublished) ("[T]he Chemistry Laboratory Report only verified . . . 15.77 grams of marijuana, having tested only 5 of 38 bags . . . . [I]t is the DHS's burden to establish by clear and convincing evidence that the respondent is removable as charged.").

Additionally, although the report indicates that photographs were taken of the bags of marijuana, including where and how they had been discovered, the government did not produce those photographs. This alone is enough to cast shade where there should be light. The incompleteness of the report detracts from its reliability, casts doubt on its credibility, and refutes the majority's belief that it is sufficiently detailed and reliable to obviously represent the factual circumstances of Bogle's final plea. *See, e.g*, *Muniz v. Amec Const. Mgmt., Inc*., 623 F.3d 1290, 1297 (9th Cir. 2010) (incomplete nature of records detracted from credibility); *O'Doan v. Sanford*, 991 F.3d 1027, 1046 (9th Cir. 2021) ("Police reports can be written quickly, at odd hours, and with other law enforcement matters pressing").

Here, we are left with only the police report's uncorroborated rendition of the quantity of the drugs, and where and how the drugs were located in the rental car. Those reliability deficiencies might be surmountable, as the majority concludes, if the question before us were whether the car physically contained more than 30 grams of marijuana. Those deficiencies, however, pale in comparison to the report's lack of probative value as to the only question actually before the BIA or the Court: To what crime did Bogle plead guilty? The ultimate failing in the government's evidence is that it does not answer the question of what crime Bogle was convicted. The crime, Bogle argues,[5] is different from what he was arrested for, because he lacked sufficient knowledge—*mens rea*—to have been convicted of an offense involving the quantify of marijuana in the trunk's compartment.

---

[5] Below, I address the frequency with which Bogle has made this argument.

The Georgia court's records documenting Bogle's conviction do not tie the bags of marijuana found in the trunk to Bogle's conviction. Unlike the alien in *Nijhawan* who stipulated at sentencing that the losses were well over $10,000, 557 U.S. at 42–43, Bogle did not stipulate to possessing more than 30 grams of marijuana. There is no other "earlier sentencing-related material" like the Pre-Sentence Report ("PSR") relied on in *Fuentes*. 788 F.3d at 1883 ("[T]he PSR states that the plea agreement stipulated to an amount of funds laundered of 'more than $70,000.'").

This Court's prior analysis of the evidentiary value of the indictment as compared to the PSR in *Fuentes* is instructive. There, the BIA initially relied on the factual description of overt acts that were incorporated into a conspiracy charge to which the alien had pled guilty. *Fuentes*, 788 F.3d at 1182. This Court intoned that, "to sustain a [money laundering] conviction, an overt act need not be proved, and overt acts alleged in a money laundering conspiracy indictment are 'not admitted by a plea.'" *Id*. Thus, this acknowledged that "a guilty plea only 'admits the facts constituting the elements of the charge.'" *Id*. (quoting *United States v. Cazares*, 121 F.3d 1241, 1246 (9th Cir. 1997)).

In *Fuentes*, because facts incorporated into the indictment were not an *element of* the underlying offense to which the alien pled guilty, this Court concluded that "[t]he BIA's reliance on these counts incorporated by reference was not fundamentally fair and does not establish by clear and convincing evidence, as required under *Nijhawan* to prove specific circumstances" to which the alien pled guilty. *Fuentes*, 788 F.3d at 1182. The Court went on to excuse the BIA's error as harmless given the contents of the PSR. *Id*. The PSR described the plea agreement as containing a stipulation as to the amount laundered. *Id*. The Court

concluded that the BIA could rely on the PSR, and that it was both fundamentally fair evidence, and clear and convincing evidence of the amount laundered.[6]  *Id.*

The police report in this case suffers from even greater defects than the indictment in *Fuentes*, which this Court rejected as being neither fundamentally fair, nor clear and convincing evidence.  788 F.3d at 1182.  Reliance on such records makes a mockery of the "fundamentally fair procedures" anticipated by immigration statutes and relieves the government of its obligation to meet its "'clear and convincing' standard."  *Nijhawan*, 557 U.S at 41–42 (quoting 8 U.S.C. 1229a(c)(3)(A)); *see Fuentes v. Lynch*, 788 F.3d 1177, 1182 (9th Cir. 2015).  *Grigoryan v. Barr*, 959 F.3d 1233, 1240 (9th Cir. 2020) (quoting *Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015)) (noncitizens "must be afforded 'the full panoply of procedural due process protections' under the Constitution[.]").

Here, again, there is *no* indication that the police report was a part of the factual basis for Bogle's guilty plea.  Bogle was charged with two crimes: possession of an ounce or more of marijuana, and possession with intent to distribute. He pled guilty to possessing an ounce or more of marijuana. The possession with intent to distribute was dismissed, "NOL PROS[d.]"[7]  That dismissed charge is the only charge Bogle faced that would be consistent with the quantity of marijuana found in the trunk.  The dismissal of that charge

---

[6] It is worth noting that, in the normal course, a PSR is tested.  The parties have a right to object, and a court decides where the truth lies by a preponderance of evidence.  *See* Fed. R. Crim. P. 32(f).

[7] NOL PROS[d] is short for Nolle Prosequi — Latin for "unwilling to prosecute."  https://www.law.cornell.edu/wex/nol_pros (last visited November 29, 2021).

strongly suggests that the marijuana in the trunk did not form the factual basis for Bogle's plea of guilty, and creates significant ambiguity as to whether he pled guilty to possession of more or less than 30 grams.

## IV.  Bogle's Knowledge

Bogle's knowledge of the existence of the drugs, and his intent regarding them, would have been a critical element of any underlying conviction the prosecution hoped to obtain.

> In a drug possession case based upon circumstantial evidence, the State must adduce evidence establishing a meaningful connection between the defendant and the drugs.  *Mere presence, without proof of participation, is insufficient to support a conviction*.  Rather, the state must show that the defendant had the power and intent to exercise control over the drugs.

*Wright v. State*, 690 S.E.2d 654 (Ga. Ct. App. 2010) (citations and quotation marks omitted, emphasis added).

One plausible reading of the record is that the prosecutor recognized that Bogle had a potentially valid defense to any charge related to the marijuana in the trunk, and exercised prosecutorial discretion to obtain a plea to something less than that reliant on the quantity of marijuana found in the compartment in the trunk.[8]  It is not Bogle's burden, of

---

[8] Bogle admits and the police report itself suggests that there was some marijuana in the cabin. The officer noted leafy flakes on the console, and the odor of marijuana.  Does the majority assume the officer was able to smell the contents of sealed bags in the sealed compartment of the closed trunk?  The record contains no findings on that issue.  In

course, to prove that the compromise struck was specifically to an amount between 28.36 and 30 grams, it is the government's burden to prove that the compromise was to some amount in excess of 30 — and for this Court to find that substantial evidence supports the BIA's corresponding conclusion.  While Bogle was initially charged with an offense consistent with the three bags, ultimately the prosecutor, looking at all the evidence, made the decision that the only charge worthy of pursuit was one which did not necessarily involve possession above the 30-gram threshold.

## V.  Bogle's Plea and Conviction

I will not join my colleagues in ignoring an element of a crime for which they conclude Bogle was convicted, knowledge of possession of three gallon-sized bags of marijuana.  Nor can I support the majority's assumption that the prosecutor's decision to drop the higher charge is not relevant to our analysis.  Indeed, had it chosen to do so, the prosecution could have sought to prove intent to distribute based on the weight of the marijuana found in the trunk alone.[9]

---

the context of criminal suppressions, at least one court within this Circuit has found that "while the fact that [an officer] 'detected the smell of marijuana from the passenger compartment . . . certainly established probable cause to believe that contraband was stored in the passenger compartment, the odor did not raise a fair probability that additional evidence would be uncovered in the trunk, let alone the [sealed container] in the trunk.'"  *United States v. Chavez*, No. 15CR285LHK, 2018 WL 4207350, at *7 (N.D. Cal. Sept. 4, 2018) (quoting an earlier order in the same case).

[9] *See Benton v. State*, 847 S.E.2d 625, 628 (Ga. Ct. App. 2020) ("The State may show intent to distribute in many ways, including expert testimony that the amount of contraband possessed was inconsistent with

The government urges the Court to consider that, as a practical matter, the evidence required to meet its burden may be challenging to obtain given that the plea bargaining process can be opaque: the "necessity" of ensuring Bogle pled guilty to the more severe charge "would be lost upon prosecutors who make charging decisions based on any number of factors." The majority appears to agree, and asserts that saving on the "potential cost of substantial expenditures of agency time[]" supports its conclusion. Opinion at 31 (citation and quotation marks omitted).

That prosecutors make charging and plea-bargaining decisions based on a variety of factors *is the very reason that the record before us is insufficient*. The significant deviation between the police report and the prosecutor's decision to dismiss the distribution offense compels a requirement for a greater factual showing than the government has made.

Furthermore, the Supreme Court has made clear that it is not appropriate for courts to consider those exact policy arguments.

> Record-keeping problems promise to occur from time to time regardless who bears the burden of proof. And, as in most cases that come our way, both sides can offer strong policy arguments to support their positions. . . . It is hardly this Court's place to pick and choose among competing policy arguments like these along the way to selecting whatever outcome seems to us most

---

personal use[.]") (citations and quotation marks omitted); *Vines v. State*, 675 S.E.2d 260, 262 (Ga. Ct. App. 2009) ("three, gallon-size bags of marijuana weighing 2.9 pounds" inconsistent with personal use).

congenial, efficient, or fair. Our license to
interpret statutes does not include the power
to engage in such freewheeling judicial
policymaking. Congress was entitled to
conclude that uncertainty about an alien's
prior conviction should [] redound to his
benefit. Only that policy choice, embodied in
the terms of the law Congress adopted,
commands this Court's respect.

*Pereida*, 141 S. Ct. at 766–67.

To affirm the BIA on this record would allow
immigration authorities to undermine the prosecutor's
exercise of discretion, and disregard Bogle's presumption of
innocence as to any conduct beyond the scope of his plea.
Immigration authorities may not condemn a defendant using
the clear and convincing standard when a prosecutor, in
bringing and resolving charges, is required to consider that
he must prove his case beyond a reasonable doubt. If
concerns regarding that heavy burden led the prosecutor to
make some concession, the alien retains the benefit of the
bargain he struck at the time he entered his plea of guilty.
Immigration proceedings are not an opportunity to strip an
alien of that benefit by retrying facts, using a lower standard
of proof. Nor should they present an opportunity for an IJ,
to adjudicate free of the Constitutional protections, like the
right to cross examine and confront adverse evidence or
statutory protections like the rules of evidence that
traditionally ensure fair resolutions for criminal defendants.

Rather, Congress requires immigration authorities to
clearly and convincingly demonstrate that the terms of a
prior *conviction* compel removal. Regarding the 30-gram
limit, the government must show that the weight of the drugs

was "tethered" to the actual "offense of conviction," not "acquitted or dismissed counts or general conduct[.]" *Nijhawan*, 557 U.S. at 42 (citation omitted).[10]  The majority ignores this aspect of *Nijhawan*.

The majority's quotations from *Ku v. Att'y Gen.*, 912 F.3d 133, 142 (3d Cir. 2019) do not indicate otherwise. The key passage relied on by the majority works for, not against, Bogle:

> Where, as here, "the record before us contains no plea agreement, and certainly not one which explicitly spells out the [quantity of marijuana] to which [Bogle] pleaded guilty," we will not assume that Bogle pleaded guilty to possessing some lower quantity of marijuana as "part of an explicit bargain between [him] and the Government" merely because "the Government *could* have charged [him] with a [more severe] crime[] but did not."  "[P]ure conjecture" cannot sever the tie between Bogle's conviction and the quantity of marijuana recorded in the police report, "[a]bsent a clear and

---

**10** *See also Rampersaud v. Barr*, 972 F.3d 55, 60 (2d Cir. 2020) ("Specifically, the BIA and IJ failed to consider, as is required by *Nijhawan*, whether more than $10,000 in victim losses were 'tied to the specific count[ ] covered by [Rampersaud's] conviction' for insurance fraud.") (quoting *Nijhawan*, 557 U.S. at 42); *Sokpa-Anku v. Lynch*, 835 F.3d 793, 796 (8th Cir. 2016) (same, collecting cases); *Singh v. Att'y Gen. of the United States*, 677 F.3d 503, 508 (3d Cir. 2012) (same); *Knutsen v. Gonzales*, 429 F.3d 733, 739–40 (7th Cir. 2005) ("The better result here, and one consistent with the statute, is that the court should focus narrowly on the loss amounts that are particularly tethered to convicted counts alone.") (cited favorably in *Nijhawan*).

unmistakable indication of [the government's stipulation to some lesser quantity] in a written plea agreement."

Opinion at 29–30 (quoting *Ku*, 912 F.3d at 142) (emphasis and alterations added)).

To begin with, *Ku's* record contained a judgment of conviction which "include[d] a total loss determination of $954,515.71 and [an] order[] [of] restitution in that amount." *Ku*, 912 F.3d at 137. These documents unambiguously defined Ku's loss amount as well above the relevant $10,000 threshold. Given that "the loss caused by the conduct *underlying the offense of conviction* establishes the *outer limits* of a restitution order[,]" *Hughey v. United States*, 495 U.S. 411, 420 (1990) (emphases added), the judgment and restitution order were obviously clear and convincing evidence supporting removal.[11]

The excerpts quoted by the majority appear in a discussion regarding deference for plea agreements specifically designed to allow defendants to avoid collateral immigration consequences.[12] Ku argued that her plea deal

---

[11] Furthermore, the oral argument in *Ku* made clear that Ku's PSR was adopted by the criminal District Court in full, and reflected that she received a 14-point enhancement under the sentencing guidelines because the losses involved in her conviction exceeded $400,000.

[12] In contrast, the record here reveals that the Georgia court intended to allow Bogle to avoid such consequences—he pled under a statute decreeing that his conviction "shall not be deemed a conviction … for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." Ga. Code § 16-13-2(a). While the statute does not override federal immigration law, if the majority seeks a "clear and unmistakable indication" of the government's intent as to the collateral consequences Bogle would suffer, the record here contains one.

was struck in accordance with such an agreement. *Ku*, 912 F.3d at 141–43. Unlike the genuine ambiguity in Bogle's record, Ku's argument was properly described as "pure conjecture." Not only did the restitution order belie the existence of any such agreement, Ku's sentencing memorandum expressly acknowledged that the conviction subjected her to automatic deportation. *Id*. at 142–43. Finally, while the Third Circuit rejected Ku's urging that the $954,515.71 figure, if accurate, would have supported more serious charges as a basis to believe that she had entered into such an agreement with the prosecutor, *id*. at 142, Bogle's argument is neither so speculative, nor unsupported by the record. Ku's argument ran openly counter to the criminal court's factual findings, whereas Bogle's is supported both by his assertion of a potentially valid affirmative defense, and the fact that the prosecutor ultimately reconsidered, and dropped, the original higher charge.[13]

The majority's opinion reveals that it has been more influenced by the circumstances of Bogle's vacated Arizona drug conviction than it admits,[14] and appears to ignore the

---

[13] There is no dispute that Bogle pled guilty "[p]ursuant to an agreement between the District Attorney's and Defendant's defense counsel and agreed to by the Court[,]" the government has simply not produced direct evidence of the agreement's specifics, and the record does not disclose whether the agreement was reduced to writing. The majority's insistence that I have "invented" such an agreement, Opinion at 30, n.14 is belied by the record.

[14] The majority asserts the Arizona conviction is an unrelated offense with no bearing on its analysis, but repeatedly references it in support of its decision. Opinion at 8 n.1, 28 n.12.

consequence of the prosecutor's dismissal of the Georgia distribution count.[15]

Simply put, the government is required to demonstrate what conduct Bogle pled guilty to committing, in Georgia, on that isolated occasion.  It has not done so.  Immigration consequences flow exclusively from a qualifying conviction, not "acquitted or dismissed counts or general conduct[.]" *Nijhawan*, 557 U.S. at 42 (citation omitted).  Ultimately, "whatever degree of ambiguity remains about the nature of [Bogle's] [only qualifying] conviction, and whatever the reason for it, one thing remains stubbornly evident: [the government] has not carried [its] burden of showing that he was not convicted of a crime involving" less than 30 grams of marijuana. *Pereida*, 141 S. Ct. at 763.

That Bogle has not challenged how much marijuana was in the trunk has no bearing on the question before this Court.  By focusing on the wrong question, the majority impermissibly shifts the government's burden to present clear and convincing evidence to support its case onto the alien.  "Congress knows how to assign the government the burden of proving a disqualifying conviction[,]" *Pereida*, 141 S. Ct. at 761, and, here, placed the burden for finding an alien removable squarely on the shoulders of government. *See Avina-Renteria v. Holder*, 434 F. App'x 626, 628 (9th Cir. 2011) ("Mere acquiescence, *or failure to contest an IJ's statement that admissions have been made*, does not meet the government's burden of proving removability by clear and convincing evidence.") (citing *Cortez-Acosta*, 234 F.3d

---

[15] There is an obvious relationship between the elements of the dismissed count and the quantity of marijuana found in the compartment in the trunk.  The dismissal of that count is both relevant to our analysis and creates ambiguity which favors Bogle.

at 481–82) (emphasis added). "[A]n inconclusive record[,]" which is all we have here, "is not sufficient." *Matter of Davey*, 26 I. & N. Dec. at 41.

"[T]he ties that legal residents develop to the American communities in which they live and work, should not be lightly severed." *Hernandez-Guadarrama*, 394 F.3d at 682–83. When the government has failed to meet its "heavy burden of clear, unequivocal, and convincing evidence[,]" *Hernandez-Guadarrama*, 394 F.3d at 679 (citations omitted), the proper course is to reverse the BIA. *See, e.g.*, *Al Mutarreb v. Holder*, 561 F.3d 1023, 1030–31 (9th Cir. 2009); *Hernandez-Guadarrama*, 394 F.3d at 683; *Avina-Renteria*, 434 F. App'x at 629. Because the government has not met its burden on this record, I would reverse the decision of the BIA.

## VI. No Further Proceedings are Warranted

The government has had ample opportunity to meet its burden in the more than four years that have passed since it initiated these proceedings. There have been nine hearings at which it could have presented additional evidence.

Bogle has repeatedly raised the issues before the Court today in prior proceedings. In his 2017 brief, Bogle, proceeding *pro se*, argued: "The government has submitted no evidence to show that Mr. Bogle was convicted of possession of more than 30 grams of marijuana for his own personal use." He renewed objections made at the hearing before the IJ, when his attorney explained: "[I]n *Matter of Davey*, there were no police reports used in order to find whether or not there were 30 grams of marijuana. So, I don't know how [the government] got that out of the *Matter of Davey*, because no police reports were used, only the charges and the sentence and orders." Bogle went on to argue in his

brief: "The government did not submit sufficient evidence to prove Mr. Bogle has been convicted of a controlled substance offense, other than an offense where he possessed a small amount of marijuana."  Because the only evidence related to the Georgia conviction concerning an amount of marijuana in excess of one ounce is the police report, there can be no doubt Bogle was arguing that it — the police report — was insufficient proof to trigger the 30-gram threshold.

After the case was remanded on other grounds, in 2019, Bogle, both when proceeding *pro se* and subsequently through counsel, continued to raise that there was insufficient evidence to meet the government's burden to prove that his conviction exceeded the 30-gram threshold, and that the police report should not have been admitted.[16] Furthermore, Bogle's 2019 brief before the BIA not only spent five pages arguing for the exclusion of the police report generally, but specifically advanced the very arguments Bogle presses here:

> The only the [admissible] document in the record relating to the Georgia conviction is the Final Disposition in Criminal Action, identified as Exhibit 23, which shows that Mr. Bogle was sentenced solely in relation to a charge of V.G.C.S.A. 16-13-30(J)(1) (Poss of Marijuana, more than an oz). No other indication of an amount is mentioned in the

---

[16] In response, the IJ incorrectly stated on multiple occasions that Bogle, rather than the government, bore the burden on that question, raising further concerns regarding the IJ's assessment of the police report.

final disposition. As such, the record in this case is inconclusive.

The charge to which Mr. Bogle was sentenced does not identify the particular amount, other than "more than an ounce". There is no charging document, plea agreement, plea colloquy, or other document in the record that reveals the factual basis for the sentence. Because Mr. Bogle's *arguendo* "conviction" *could* have rested on facts that do not relate to no more than 30 grams of marijuana, the Court cannot conclusively connect the arguendo "conviction" to what is a controlled substance conviction under INA § 237(a)(2)(D)(i), the sole remaining ground of removability claimed by the DHS.

The government has had sufficient notice and multiple opportunities to correct its own error by supplementing its evidence. Despite these opportunities, and the benefit of this Court's analysis regarding the indictment in *Fuentes*, the government has taken no steps to meet its burden. Given that the immigration authorities have been applying the circumstance-specific approach throughout Bogle's proceedings, the government cannot claim it was limited in what it could introduce and rely on, and now needs an opportunity to expand the scope of its submissions. *Cf. Kawashima v. Holder*, 615 F.3d 1043, 1056–57 (9th Cir. 2010), *aff'd*, 565 U.S. 478 (2012) (Remanding for further factual findings on rehearing after intervening Supreme Court precedent held that the circumstance-specific, rather than categorical, approach applied, and describing how this Court has "distinguished between circumstances in which remand is necessary to permit the BIA to apply its expertise

in reconsidering evidence and circumstances in which remand is unnecessary because the BIA exercised its expertise before the case came before us."). It is time for this matter to come to an end.

While remand is the "ordinary practice[,]"the government has given us no reason to grant such relief. *See Medina-Lara v. Holder*, 771 F.3d 1106, 1118 (9th Cir. 2014) ("The government has given us no reason to provide it a third bite at the apple[.]") (citations and quotation marks omitted); *Kureghyan v. Holder*, 338 F. App'x 622, 624 (9th Cir. 2009) (memorandum) ("[R]emand to the agency would serve little purpose other than providing the DHS with an unfair second bite at the apple."). Plainly stated, "[t]here is no clear and convincing evidence in the record linking" the 2.94 pounds of marijuana in the trunk to Bogle's conviction, "the government has not suggested how it would cure this deficiency on remand[,]" and the government has already amply litigated the 30-gram threshold as it relates to the Georgia conviction. *Medina-Lara*, 771 F.3d at 1118–19. Accordingly, I would grant Bogle's petition.