**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SOSIMO VERA CHAIREZ, | No. 24-4137 |
| *Plaintiff - Appellant*, | D.C. No. 1:22-cv-00291-AKB |
| v. | |
| Secretary ALEJANDRO MAYORKAS, Secretary of the U.S. Department of Homeland Security; UR M. JADDOU, Director of U.S. Citizenship & Immigration Services (USCIS); UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; LAURA ZUCHOWSKI, Director of the Vermont Service Center of USCIS, | OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the District of Idaho
Amanda K. Brailsford, District Judge, Presiding

Argued and Submitted July 11, 2025
Seattle, Washington

Filed March 5, 2026

Before: Susan P. Graber, Carlos T. Bea, and Mark J.
Bennett, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Bea

## SUMMARY[*]

### Immigration

The panel affirmed the district court's dismissal, for lack of jurisdiction, of Plaintiff Sosimo Vera Chairez's challenge under the Administrative Procedure Act to the United States Citizenship and Immigration Services' denial of his request for a waiver of inadmissibility, which he had sought to be eligible for a U visa.

The panel held that the agency's denial of a waiver of inadmissibility under 8 U.S.C. § 1182(d)(14) falls within 8 U.S.C. § 1252(a)(2)(B)(ii), which precludes judicial review of agency action "the authority for which is specified under this subchapter to be in the discretion of the . . . Secretary." The statute speaks in permissive terms by using "may" and the statute's instruction that the waiver may issue if the Secretary "considers" it to be in the national or public interest reinforces its discretionary nature.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel rejected Plaintiff's argument that the court had jurisdiction to review the Secretary's decision because the phrase "the public or national interest" is a judicially manageable standard. In doing so, the panel recognized that the Supreme Court's decision in *Bouarfa v. Mayorkas*, 604 U.S. 6 (2024), overruled the holding and methodology set out in *ANA International v. Way*, 393 F.3d 886 (9th Cir. 2004), which had focused on whether the statutory term— considered in isolation—provided a reviewable standard. Following *Bouarfa*, when Congress signals that it is merely providing guidance to the agency on its exercise of discretion—as opposed to providing prerequisites—the discretionary judgment call as a whole falls within the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii).

The panel also concluded that 8 U.S.C. § 1252(a)(2)(D), which expressly preserves judicial review of constitutional and legal claims, does not provide district courts with jurisdiction because it only preserves review when such claims are raised in a petition for review from a final order of removal "filed with an appropriate court of appeals."

The panel also rejected, at this procedural juncture, Plaintiff's argument that the statutory scheme unconstitutionally deprived him of any judicial review. To the extent Plaintiff had a viable challenge to the agency's decisions, the only place he could advance that claim is in removal proceedings and a subsequent petition for review in a court of appeals.

Finally, although this court held, in *Poursina v. U.S. Citizenship & Immigr. Servs.*, 936 F.3d 868 (9th Cir. 2019), that the court retains jurisdiction over colorable constitutional claims that challenge agency procedures, the

panel concluded that it lacked jurisdiction here because Plaintiff's constitutional claim was entirely speculative and not colorable. The panel also concluded that there is no conflict between *Poursina* and *Nakka v. USCIS*, 111 F.4th 995 (9th Cir. 2024).

Concurring in part and concurring in the judgment, Judge Bea wrote that there exists an irreconcilable Ninth Circuit intra-circuit split regarding whether the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(B) and (D) restrict all claimed constitutional challenges to United States Citizenship and Immigration Service's discretionary determinations of immigration status to a petition for review of a final order of removal (*Nakka*) or whether such challenges may be heard in district court (*Poursina*). In Judge Bea's view, an en banc panel of this Court should be constituted to resolve this irreconcilable conflict. Judge Bea also wrote that this court's practice of avoiding jurisdiction based on whether a claim is "colorable" ought to be reevaluated.

## COUNSEL

Nicholas Ratkowski (argued), Ratkowski Law PLLC, Saint Paul, Minnesota; Nicole R. Derden, Law Offices of Nicole R. Derden, Meridian, Indiana; for Plaintiff-Appellant.

Lauren E. Fascett (argued), Sarah L. Vuong, and Matthew Seamon, Senior Litigation Counsel; Victoria Turcios and Kevin Hirst, Trial Attorneys; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

## OPINION

PER CURIAM:

Plaintiff Sosimo Vera Chairez, a native and citizen of Mexico, applied to the United States Citizenship and Immigration Services ("USCIS") for a nonimmigrant U visa. Such visas are not available to noncitizens who, for one reason or another, are inadmissible to the United States under the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1182(a). Plaintiff concedes that he is inadmissible, but he sought to have his conditions of inadmissibility waived by USCIS. Were he to obtain an inadmissibility waiver, Plaintiff argues, he would become eligible for a U visa. The INA provides that the Secretary of Homeland Security may, in the Secretary's discretion, grant a waiver of inadmissibility to a U-visa applicant when the Secretary considers a waiver to be in the public or national interest. 8 U.S.C. § 1182(d)(14). USCIS denied Plaintiff's request for a waiver and, as a consequence, also denied his request for a U visa.

Plaintiff sued in district court under the Administrative Procedure Act ("APA"), alleging that USCIS's denial of his request for a waiver of inadmissibility was unlawful. The district court dismissed the action for lack of subject matter jurisdiction. We have appellate jurisdiction to review that final order pursuant to 28 U.S.C. § 1291, and we review de novo whether the district court had jurisdiction. Gila River Indian Cmty. v. U.S. Dep't of Veterans Affs., 899 F.3d 1076, 1078 (9th Cir. 2018). Because the district court correctly held that it lacked jurisdiction, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In 2016, Plaintiff applied to USCIS for a U visa by filing a Form I-918, "Petition for U Nonimmigrant Status." The U visa is so named because it applies to a class of nonimmigrants defined in subsection U of the relevant provision of the INA, 8 U.S.C. § 1101(a)(15)(U). According to USCIS, the U visa "is set aside for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity." Victims of Criminal Activity: U Nonimmigrant Status, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/humanitarian/victims-of-criminal-activity-u-nonimmigrant-status. The INA specifies the categories of crimes the victims of which may be eligible for a U visa. 8 U.S.C. § 1101(a)(15)(U)(iii).

Like all visas, the U visa typically is not available to "aliens who are inadmissible" to the United States due to a statutory condition. See 8 U.S.C. § 1182(a). But the INA provides some avenues for inadmissible nonimmigrants to obtain a visa. One such avenue is enumerated specifically for U visa applicants. 8 U.S.C. § 1182(d)(14). The INA provides that the Secretary of Homeland Security "shall determine whether a ground of inadmissibility exists" with respect to a nonimmigrant seeking a U visa and that the Secretary, "in [the Secretary's] discretion, may waive" the inadmissibility of such a nonimmigrant "if the Secretary . . . considers it to be in the public or national interest to do so."[1] Id.

---

[1] This portion of the statute contains a scrivener's error. It states that the "Secretary of Homeland Security, in the Attorney General's discretion,

In addition to submitting his application for a U visa, Plaintiff also submitted a Form I-192, "Application for Advance Permission to Enter as Nonimmigrant," in which he claimed "U nonimmigrant status" and explicitly requested a waiver of inadmissibility. On his Form I-192, Plaintiff represented as follows:

> I believe that I am inadmissible because I entered the United States without permission and lived unlawfully in the United States for more than a year, and then reentered the United States without permission. I also may be inadmissible because I have been removed from the United States before. I may also be inadmissible for having possessed a

---

may waive" conditions of inadmissibility for U-visa applicants. 8 U.S.C. § 1182(d)(14) (emphasis added). This provision was meant to say that the Secretary of Homeland Security is the one who has such discretion. The error arose after the creation of the Department of Homeland Security, when Congress transferred authority over a large amount of immigration administration from the Attorney General and the Department of Justice to the Secretary of Homeland Security and the newly created USCIS. More specifically, Congress directed all references to "Attorney General" in subsection (d)(14) to be replaced by "Secretary of Homeland Security." See Meridor v. U.S Att'y Gen., 891 F.3d 1302, 1306 n.6 (11th Cir. 2018) (detailing the relevant statutory history). The scrivener apparently did not change this reference to the Attorney General because of punctuation—an apostrophe-s following "Attorney General." We agree with the Eleventh Circuit that the scrivener erred and that Congress intended to change this reference, too. Id.; see also U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 462 (1993) ("Courts, we have said, should 'disregard the punctuation, or repunctuate, if need be, to render the true meaning of the statute.'" (quoting Hammock v. Loan & Tr. Co., 105 U.S. 77, 84–85 (1882))).

> controlled substance.    Please waive any
> grounds that may apply to me.

In 2020, USCIS denied Plaintiff's Form I-918 application for a U visa on the ground that he was inadmissible, even though the agency had not issued any decision on Plaintiff's Form I-192 request for a waiver of inadmissibility.  Plaintiff timely appealed the denial of his U-visa application to USCIS's Administrative Appeals Office.   In 2021, while his appeal of that decision was pending, USCIS issued a formal denial of his request for a waiver of inadmissibility.   The Administrative Appeals Office later dismissed Plaintiff's appeal.

In 2022, Plaintiff timely brought the instant action under the APA, challenging the agency's denials of his applications for a U visa and for a waiver of inadmissibility. After Plaintiff filed the action, USCIS reopened both of his applications.  USCIS determined that its initial denial of Plaintiff's I-918 application for a U visa had been "procedurally improper" because it rested on the denial of his request for a waiver, "which had not yet been adjudicated at the time [his] Form I-918 was denied."  In 2023, USCIS issued new decisions denying Plaintiff's application both for a U visa and for a waiver of inadmissibility.[2]

Following the new denials, Plaintiff amended his complaint to reassert his claim under the APA that the denials of his applications were unlawful.   Plaintiff also

---

[2] In its initial denials of Plaintiff's applications, USCIS asserted at least seven independent grounds on which it determined that Plaintiff was inadmissible.   After the agency re-opened and re-adjudicated the applications, however, it asserted only two grounds for Plaintiff's inadmissibility: presence without admission or parole and unlawful presence for one year after entering without admission.

added a Fifth Amendment claim alleging that USCIS denied him his due process right to a neutral decisionmaker because it was biased against him. Defendants moved to dismiss the action for lack of subject matter jurisdiction and for failure to state a claim for relief.

The district court granted Defendants' motion to dismiss for lack of subject matter jurisdiction. The district court concluded that the INA strips district courts of jurisdiction to review USCIS's denial of a § 1182(d)(14) waiver because the INA specifies that the decision to grant such a waiver is in the discretion of the agency. This timely appeal followed.

## DISCUSSION

The APA waives the United States' sovereign immunity with respect to suits brought by persons injured by certain agency actions, and it creates a right of judicial review. 5 U.S.C. § 702. The statute instructs reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed" and to "set aside" final agency actions that are unlawful in particular ways. 5 U.S.C. § 706. But the APA does not apply to all grievances against agency action. As relevant here, it does not apply when other "statutes preclude judicial review" of the agency action in question, or when the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

In the INA, "Congress has sharply circumscribed judicial review" over the actions of federal immigration authorities regarding discretionary relief. Patel v. Garland, 596 U.S. 328, 332 (2022). The INA provides that "no court shall have jurisdiction to review" agency decisions to grant or deny certain kinds of discretionary relief. 8 U.S.C. § 1252(a)(2)(B). The two subsections of this jurisdiction-stripping provision deal with different sets of discretionary

relief.  In § 1252(a)(2)(B)(i), the INA enumerates several statutory provisions that provide for discretionary relief, none of which is at issue here.  In § 1252(a)(2)(B)(ii), Congress further strips federal courts of jurisdiction to review "any other decision or action of the . . . Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the . . . Secretary."

Thus, § 1252(a)(2)(B)(ii) "supersedes the default rule that agency actions are reviewable pursuant to federal question jurisdiction and the [APA]."  Vega v. U.S. Citizenship & Immigr. Servs., 65 F.4th 469, 471 (9th Cir. 2023).  In other words, the APA's express limitation that it does not apply when "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), applies whenever the agency action at issue falls within the INA's jurisdictional bar in § 1252(a)(2)(B)(ii).

Importantly, the pertinent provision of the APA in this case is § 701(a)(1)—not § 701(a)(2).  Confusing as it might be, the question whether "agency action is committed to agency discretion by law"—and thus is carved out of the APA by 5 U.S.C. § 701(a)(2)—differs substantially from the question whether a particular agency action is "specified to be in the discretion" of the agency for purposes of § 1252(a)(2)(B)(ii).  Compare Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv., 586 U.S. 9, 23 (2018) ("[W]e have read the exception in § 701(a)(2) quite narrowly."), with Zia v. Garland, 112 F.4th 1194, 1200 (9th Cir. 2024) ("We read [§ 1252(a)(2)(B)(ii)] expansively to cover all determinations made in support of a grant of discretionary relief.").

Despite the textual similarities between § 1252(a)(2)(B)(ii) and § 701(a)(2), there is good reason to interpret them differently.  The Supreme Court has

recognized that the APA "creates a basic presumption of judicial review for one suffering legal wrong because of agency action." Weyerhaeuser, 586 U.S. at 22 (cleaned up). Further, the APA expressly instructs courts to apply the "abuse of discretion" standard to certain agency actions—a command that is hard to square with a rule that all actions "committed to agency discretion by law" are unreviewable. Id. at 23. On the other hand, "the text and context of [§ 1252(a)(2)(B)(ii)]—which is, after all, a jurisdiction-stripping statute—clearly indicate" Congress's intent to preclude most judicial review "in the discretionary-relief context." Patel, 596 U.S. at 347. So we put a thumb on the scale in favor of judicial review when we apply the APA's discretionary exception in § 701(a)(2), but that interpretation does not apply to Congress's explicit and expansive jurisdiction-stripping wording in § 1252(a)(2)(B)(ii). And when § 1252(a)(2)(B)(ii) applies, the operative APA exception is § 701(a)(1), because another statute, namely the INA, "preclude[s] judicial review." 5 U.S.C. § 701(a)(1).

The INA's jurisdictional bar, however, is not unqualified. Sometimes referred to as a "savings clause" or the "limited review provision," § 1252(a)(2)(D) does allow for "review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." See Zia, 112 F.4th at 1199. Such petitions for review are available to review only a final order of removal, and they are the "sole and exclusive means for judicial review" of removal orders. 8 U.S.C. § 1252(a)(5).

A.  The Agency's Denial of a Waiver of Inadmissibility
     Falls Within § 1252(a)(2)(B)(ii)'s Jurisdictional Bar.

The question to which we now turn is whether the agency action that Plaintiff seeks to challenge—USCIS's denial of his request for a waiver of inadmissibility under § 1182(d)(14)—falls within § 1252(a)(2)(B)(ii)'s jurisdictional bar.  We hold that it does.

The plain text of § 1182(d)(14) and § 1252(a)(2)(B)(ii) all but resolves the matter.  Recall that § 1252(a)(2)(B)(ii) precludes judicial review of agency action "the authority for which is specified under this subchapter to be in the discretion of the . . . Secretary."  Sections 1182(d)(14) and 1252(a)(2)(B)(ii) both fall within subchapter II of 8 U.S.C. Chapter 12.  The primary question we must answer, then, is whether the authority to grant a waiver of inadmissibility under § 1182(d)(14) is "specified to be in the discretion of the Secretary."

Section 1182(d)(14) states that "[t]he Secretary of Homeland Security, in [the Secretary's] discretion, may waive [conditions of inadmissibility] in the case of a nonimmigrant [seeking a U visa], if the Secretary of Homeland Security considers it to be in the public or national interest to do so." (Emphases added.)  Several textual factors persuade us that the decision whether to grant a § 1182(d)(14) waiver is discretionary within the meaning of § 1252(a)(2)(B)(ii).  Most obviously, the "plain terms of the statute invoke the agency's discretion."  Vega, 65 F.4th at 471.  And the statute speaks in permissive terms, stating that the Secretary "may" waive a condition of inadmissibility, not that the Secretary "shall" or "must."  This wording "brings along the usual presumption of discretion."  Id. (quoting Poursina v. U.S. Citizenship & Immigr. Servs., 936

F.3d 868, 871 (9th Cir. 2019)). The statute's instruction that the waiver may issue if the Secretary "considers" it to be in the national or public interest—as opposed to whether it actually <u>is</u> in the national or public interest—"reinforces its discretionary nature." See <u>Poursina</u>, 936 F.3d at 871 ("Congress's use of 'deems' connotes that the Attorney General's determination involves some measure of judgment.").

Indeed, we reached the same conclusion when we considered a substantially similar provision of the INA in <u>Vega</u>. There, the plaintiff had filed an APA suit in district court challenging USCIS's decision to deny him a waiver of inadmissibility under 8 U.S.C. § 1182(d)(3)(A)(ii).**[3]** <u>Vega</u>, 65 F.4th at 471. The waiver provision at issue in <u>Vega</u> states that an otherwise inadmissible noncitizen "may be admitted into the United States . . . in the discretion of the Attorney General." § 1182(d)(3)(A)(ii); <u>see also</u> <u>Vega</u>, 65 F.4th at 471. We held that the decision whether to issue that kind of waiver is unreviewable under § 1252(a)(2)(B)(ii) because it is specified to be in the sole discretion of the Attorney General. <u>Vega</u>, 65 F.4th at 471.

Plaintiff argues that <u>Vega</u> is distinguishable. In his view, the provision at issue in <u>Vega</u> contained no qualifying limitation on the Attorney General's exercise of discretion, while the Secretary's discretion under § 1182(d)(14) is limited to some degree. Specifically, § 1182(d)(14) authorizes the Secretary's discretion to grant a waiver "if the

---

[3] Like Plaintiff here, the plaintiff in <u>Vega</u> was seeking a U visa and had also applied for a § 1182(d)(14) waiver. But the plaintiff abandoned his argument that § 1182(d)(14) provided a basis for jurisdiction, so we left that question for another day, which has here and now arrived. See <u>Vega</u>, 65 F.4th at 471 n.1.

Secretary of Homeland Security considers it to be in the public or national interest to do so." Plaintiff argues that, because "the public or national interest" is a judicially manageable standard of review, we have jurisdiction to review the Secretary's determination in this regard.

We reject Plaintiff's argument, but some explanation is needed. The doctrine invoked by Plaintiff traces back to our decision in Spencer Enterprises, Inc. v. United States, 345 F.3d 683 (9th Cir. 2003). The immigration statute at issue in that case did not state that the relevant decision was discretionary, and the statute used the word "shall," not "may." Id. at 688. We held that § 1252(a)(2)(B)(ii) did not strip us of jurisdiction to hear challenges to the agency's decision, because the statute did not confer discretion. Id. at 688–92. But much of our reasoning focused on whether the statute provided for "discretion guided by legal standards." Id. at 690 (emphasis added).

We expanded our rule the next year in ANA International v. Way, 393 F.3d 886 (9th Cir. 2004). The plaintiff in that case challenged the Attorney General's revocation of a visa pursuant to 8 U.S.C. § 1155, which provided that the Attorney General "may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition" for an immigrant visa. 8 U.S.C. § 1155; see ANA Int'l, 393 F.3d at 893. Applying Spencer, we held that the statutory phrase "good and sufficient cause"—considered in isolation—provided an objective legal standard and that, accordingly, we had jurisdiction to review the plaintiff's challenges to the agency's decision. ANA Int'l, 393 F.3d at 893–94.

We applied that analysis more recently in Poursina v. USCIS, 936 F.3d 868 (9th Cir. 2019). The statute at issue

there provided that "the Attorney General may, when the Attorney General deems it to be in the national interest, waive" certain requirements. 8 U.S.C. § 1153(b)(2)(B)(i). We held that the statute's use of the word "may" conveyed discretion to the Attorney General. Poursina, 936 F.3d at 870–73.

We then addressed the plaintiff's argument that "ANA International compel[led] a contrary result." Id. at 873. We analyzed the argument in two parts. First, we held that "national interest"—even considered in isolation—was not a judicially manageable standard because it "invokes broader economic and national-security considerations, and such determinations are firmly committed to the discretion of the Executive Branch." Id. at 874. We contrasted the "national interest" wording with the "good cause" wording from ANA International. Id. We held that "good cause" is a judicially manageable standard because, "[i]n a variety of contexts, federal courts must make findings of 'good cause.'" Id. (citing cases in other contexts).

Second, we questioned the continuing vitality of the methodology applied in ANA International. Id. at 875. "Indeed, even if the [statute at issue in Poursina] resembled the one discussed in ANA International"—that is, if a part of the statute, considered alone, provided a judicially manageable standard—"we would hesitate to extend such decision beyond its narrow holding." Id. We pointed out that ANA International's rule was an "outlier." Id.

We now hold that ANA International is no longer good law, both with respect to its narrow holding and with respect to its methodology. In Bouarfa v. Mayorkas, 604 U.S. 6 (2024), the Supreme Court addressed the same legal issue decided in ANA International: whether federal courts have

jurisdiction over the agency's visa-revocation decisions pursuant to 8 U.S.C. § 1155. The Court concluded that federal courts lack jurisdiction to review the agency's decisions under § 1155, which includes the phrase "good and sufficient cause." Id. at 19. The Court expressly noted that we had reached the opposite jurisdictional conclusion in ANA International. Id. at 13 n.3. Bouarfa thus clearly overruled the legal holding in ANA International, specifically, that we have jurisdiction to review the agency's decisions pursuant to § 1155.

As to methodology, nowhere did the Court ask whether "good and sufficient cause" independently provided a judicially manageable standard. Instead, the Court cited Webster v. Doe, 486 U.S. 592, 600 (1988), to emphasize that, because the statute permitted discretion whenever the Attorney General "deems" there to be good and sufficient cause, the statute was discretionary. Id. at 14. In a parenthetical, the Court explained that Webster had held "that a statute permitting the agency to terminate an employee whenever it '"deem[s] such termination necessary or advisable in the interests of the United States"' was discretionary." Id. (alteration by Bouarfa). Thus, Bouarfa also is clearly irreconcilable with the methodology that we employed in ANA International and its progeny. ANA International stripped out the qualifying text from its context and asked whether that text, considered alone, could provide a judicially manageable standard. 393 F.3d at 893–94. That methodology no longer applies. Instead, when Congress signals that it is merely providing guidance to the agency on its exercise of discretion, the discretionary judgment call as a whole falls within the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii).

It is important to distinguish here between guidance to the agency on its exercise of discretion, on the one hand, and statutory legal prerequisites, on the other hand. Many statutes grant discretion to an agency, but only if certain statutory requirements are met. For example, cancellation of removal allows the agency to cancel removal, but only if certain prerequisites are met. 8 U.S.C. § 1229b(a); see Lemus-Escobar v. Bondi, 158 F.4th 944, 952–54 (9th Cir. 2025) (describing cancellation of removal, the prerequisites, and our jurisdiction). The Supreme Court in Bouarfa referred to those prerequisites as "threshold requirements." 604 U.S. at 15.

Here, as in Bouarfa, the relevant statutory text contains only guidance to the agency on its exercise of discretion; it contains no threshold requirements. The statute at issue here allows the Secretary, in the Secretary's discretion, to waive certain requirements "if the Secretary of Homeland Security considers it to be in the public or national interest to do so." 8 U.S.C. § 1182(d)(14) (emphasis added). Just as the statute at issue in Bouarfa used the word "deems" to signal guidance on the exercise of the agency's discretion—as opposed to a threshold legal requirement—the statutory text just quoted uses the word "considers" equally to signal guidance on the exercise of the agency's discretion. See also Ruiz v. Bondi, 163 F.4th 586, 592–95 (9th Cir. 2025) (concluding that a statutory provision was discretionary within the meaning of 8 U.S.C. § 1252(a)(2)(B)(ii) where that provision, 8 U.S.C. § 1158(a)(2)(D), states that the Attorney General "may" grant relief if the petitioner "demonstrates to the satisfaction of the Attorney General" that "extraordinary circumstances" existed).

In sum, we recognize as overruled both ANA International's specific holding and its methodology. See

Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).  Going forward, in a case brought in district court under the APA, if a clause provides <u>only</u> guidance to the agency on its exercise of discretion, then that guidance is part of the exercise of discretion and falls within 8 U.S.C. § 1252(a)(2)(B)(ii).     We shall not consider, as we erroneously did in <u>ANA International</u>, whether the guidance—stripped of its context—could provide a judicially manageable legal standard.  That question is no longer relevant in interpreting a statute of this kind.  Because the statutory text in § 1182(d)(14) confers discretion to the Secretary, § 1252(a)(2)(B)(ii) applies, thus precluding judicial review of USCIS's decision to deny Plaintiff's waiver of inadmissibility under § 1182(d)(14).   5 U.S.C. § 701(a)(1).[4]

   B.  <u>The INA's Savings Clause Does Not Apply Here.</u>

   The INA's savings clause, § 1252(a)(2)(D), expressly preserves judicial review of constitutional and legal claims, but only when such claims are raised in a petition for review from a final order of removal "filed with an appropriate court of appeals in accordance with this section."   8 U.S.C. § 1252(a)(2)(D).   Under § 1252(a)(5), such petitions for review may be taken only as to "an order of removal entered or issued" by the immigration courts.  Nothing in the text of § 1252—or any other provision of the INA—can be read to

---

[4] Plaintiff also argues that the district court erred by adjudicating Defendants' motion to dismiss without complying with the APA's requirement to review the entire administrative record.  See 5 U.S.C. § 706.  But because we conclude that the INA "preclude[s] judicial review," 5 U.S.C. § 701(a)(1), the APA expressly does not apply.  Thus, § 706 does not govern.  The district court was under no obligation to require Defendants to file the administrative record before it decided the threshold question of its own jurisdiction.

provide <u>district courts</u> with jurisdiction, in the context of an APA challenge, to review infirmities underlying otherwise unreviewable, discretionary decisions.**[5]**

C.  <u>We Reject, at this Procedural Juncture, Plaintiff's Argument that the Statutory Scheme is Unconstitutional.</u>

Plaintiff asks us to allow his suit in district court to proceed because the interpretation of the INA's jurisdictional provisions that we have adopted here works to deprive him of any avenue to obtain judicial review of USCIS's allegedly improper action against him.  If that is the result, Plaintiff says, the INA is unconstitutional as applied to him because the statute "inherently and necessarily permits USCIS to violate the Constitution with complete and total impunity when adjudicating § 1182(d)(14) waivers."

We are not persuaded that Plaintiff is constitutionally entitled to judicial review in district court as things stand today.  As the Supreme Court stated in <u>Patel</u>, Congress has made a "choice to provide reduced procedural protection for discretionary relief, the granting of which is not a matter of right under any circumstances, but rather is in all cases a matter of grace."  596 U.S. at 345 (internal quotation marks and citation omitted).  For that reason, it is not necessarily the case that the INA's narrowing of Plaintiff's path to judicial review—or even potentially its closure of any path—renders the statute unconstitutional as applied to him.

---

[5] Plaintiff suggests in passing that we can "convert" this appeal into a petition for review.  Plaintiff supplies no legal authority for that maneuver, and we are aware of none.  Section 1252 establishes that a petition for review is a vehicle reserved for a challenge to a final order of removal, and no such order is before us.

But to resolve the case before us, we need not resolve Plaintiff's argument. In rejecting his constitutional challenge to the INA, we emphasize that we do not decide today whether, or to what extent, Plaintiff can raise his claims in removal proceedings. Nor do we decide whether, if the immigration courts cannot review his claims, such a result would violate the Constitution. What we do decide is that, to the extent Plaintiff has a viable challenge to the discretionary decisions of the immigration authorities, the only place he can advance that claim is in removal proceedings and a subsequent petition for review in the court of appeals. It would be premature, and speculative, to say conclusively that the procedure Congress has provided is so inadequate that it forces us to set aside the INA's jurisdictional bar and allow Plaintiff's APA suit to proceed. The forum for that question is on a petition for review from a final order of removal, as § 1252(a)(2)(D) requires.[6]

To put it another way, the fact that Plaintiff might not be able to obtain judicial review in removal proceedings does not affect the outcome here. If Plaintiff is correct that the

---

[6] Plaintiff may yet be able to obtain some form of review—or at least relief—in removal proceedings, which would alleviate his constitutional concern here. For example, several of our sister circuits have held that immigration judges have the power to grant waivers of inadmissibility to U-visa applicants under § 1182(d)(3)(A)(ii). See Jimenez-Rodriguez v. Garland, 996 F.3d 190, 200 (4th Cir. 2021); Meridor, 891 F.3d at 1307; L.D.G. v. Holder, 744 F.3d 1022, 1030 (7th Cir. 2014). And there may be other forms of relief that Plaintiff can seek in immigration court that would allow him to present any infirmity underlying his immigration status. Without resolving those questions here, we observe that it is too soon to say, one way or the other, whether Plaintiff truly has no statutory path to judicial review under the regime that Congress has prescribed and whether the Constitution requires judicial review in a future proceeding.

Constitution entitles him to judicial review, that will be as true in later removal proceedings as it is here in his APA suit. In this respect, we agree with and are bound by our recent decision in Garcia v. U.S. Citizenship & Immigration Services, 146 F.4th 743 (9th Cir. 2025), petition for cert. filed, No. 25-937 (U.S. Jan. 28, 2026).[7]  There, we rejected a nearly identical argument made by a plaintiff who sought a different sort of discretionary relief in pursuit of a U visa. As we stated there, "we see no reason why [the plaintiff] has a constitutional entitlement to raise her claim to judicial review in district court as opposed to through [removal proceedings] and [the] petition for review process."  Id. at 756.  If removal proceedings turn out to be an inadequate forum for his constitutional and legal claims, Plaintiff can raise his constitutional challenge to the INA's jurisdictional provisions again in a petition for review, where the INA expressly supplies us with jurisdiction to consider it.

> D. Plaintiff Does Not Raise a Colorable Constitutional Challenge to the Agency's Procedures.

Plaintiff raises one argument that falls outside the analysis discussed above.  Specifically, he argues that the agency violated procedural due process because, he asserts, the decision maker was biased against him.

Notwithstanding the discussion above, which concerns challenges to the discretionary determination itself, we retain jurisdiction over colorable constitutional claims that challenge the procedures used by the agency.  On this point, our decision in Poursina controls.  In Poursina, as here, the

---

[7] Garcia was decided after oral argument in this case, but it was argued and submitted on an earlier date and thus has priority over the disposition of any common legal questions.  See General Order 4.1(a).

agency denied the waiver of a requirement for a visa; the plaintiff then filed suit in district court; and we held that the statute granted discretion to the agency, so the agency's decision was generally unreviewable. 936 F.3d at 870–75. But we also held in Poursina that we retained jurisdiction over the plaintiff's constitutional argument that he had been deprived of due process because he allegedly failed to receive a notice from the agency. Id. at 875–76. We held that "[t]his constitutional claim is not subject to § 1252(a)(2)(B)(ii)'s jurisdictional bar," and we addressed the merits of the claim. Id. at 876.

Plaintiff's constitutional claim here is, like the one in Poursina, purely a procedural due process claim challenging the agency's process, not a claim challenging the underlying merits of the agency's discretionary determination. See id. (holding that we have jurisdiction over a procedural constitutional claim); Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (rejecting the argument that § 1252(a)(2)(B) stripped jurisdiction over a procedural due process claim brought in district court and addressing the merits); see also Bouarfa, 604 U.S. at 18 n.5 (noting that the plaintiff did not allege "that the agency violated constitutional or procedural requirements when it revoked her petition" and expressing "no view as to whether a lawsuit with such allegations would be reviewable"). Accordingly, we have jurisdiction to review Plaintiff's procedural constitutional claim—if it is colorable, Bogle v. Garland, 21 F.4th 637, 654 (9th Cir. 2021); Torres-Aguilar v. INS, 246 F.3d 1267, 1271 (9th Cir. 2001).

Our recent decision in Garcia is not in tension with Poursina because the plaintiff in Garcia challenged the denial of her U visa only on statutory—not constitutional—grounds. See Garcia, 146 F.4th at 746. Specifically, the

plaintiff argued that the governing statutes did not permit USCIS to follow a policy that requires applicants for adjustment of status to divulge health-related information. Id. at 747. The plaintiff asserted that the lack of an avenue for judicial review violated the Constitution, but she did not challenge the procedures employed by the agency. Id. at 755–56. Perhaps because the issues do not overlap, Garcia did not cite or discuss Poursina.

Nor is there a conflict between Poursina and our decision in Nakka v. USCIS, 111 F.4th 995 (9th Cir. 2024). As in Garcia, we held in Nakka that, because of the channeling aspects of § 1252(a)(2), the plaintiffs could not obtain judicial review in district court of the agency's denial of an immigration benefit; ordinary challenges to the denial of discretionary relief must proceed through a petition for review. Nakka, 111 F.4th at 1012–15. The plaintiffs had alleged that certain substantive policies adopted by USCIS violated equal protection principles, that the policies were arbitrary and capricious in violation of the APA, and that the agency violated the APA's rulemaking procedures in adopting the policies. Id. at 1001. But no plaintiff challenged the agency's procedures in adjudicating a specific application. Likely for that reason, Nakka had no reason to cite or discuss Poursina when discussing the channeling provisions. Nakka cited Poursina only in a footnote, on an unrelated topic, in an unrelated section of the opinion. Id. at 1008 n.14.

We nevertheless conclude that we lack jurisdiction because Plaintiff's claim here is entirely speculative and not colorable. Because there is no colorable constitutional claim, we lack jurisdiction. Bogle, 21 F.4th at 654; Torres-Aguilar, 246 F.3d at 1271.

**AFFIRMED.**

BEA, Circuit Judge, concurring in part and concurring in the judgment.

There exists an irreconcilable Ninth Circuit intra-circuit split regarding whether the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(B) and (D) restrict all claimed constitutional challenges to United States Citizenship and Immigration Service's ("USCIS") discretionary determinations of immigration status to a petition for review of a final order of removal or whether such challenges may be heard in district court. *Compare Poursina v. United States Citizenship & Immigr. Servs.*, 936 F.3d 868 (9th Cir. 2019) *with Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995 (9th Cir. 2024). An en banc panel of this Court should be constituted to resolve this irreconcilable conflict. *See Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir. 1987) (en banc) ("[T]he appropriate mechanism for resolving an irreconcilable [intra-circuit] conflict is an en banc decision. A panel faced with such a conflict must call for en banc review, which the court will normally grant unless the prior decisions can be distinguished.").

The majority neglects this conflict. Thus, I join in full as to Parts A–C of the majority's opinion, but I only concur as to the result in Part D.

In Part D of the opinion, the majority confronts Chairez's constitutional claim in which he argues that USCIS violated the Fifth Amendment's Due Process Clause because the

agency was biased against him.[1]     Instead of applying § 1252(a)(2)(B) and (D)'s jurisdictional bar and channeling provision to this constitutional claim, the majority asserts that it is bound by *Poursina*'s holding that procedural due process claims as to agency actions which deny a requested visa status may be brought in federal district court.  Maj. Op. at 21; *see Poursina*, 936 F.3d at 876 ("[T]his constitutional claim is not subject to § 1252(a)(2)([B])(ii)'s jurisdictional bar . . . [because] 'decisions that violate the Constitution cannot be "discretionary," so claims of constitutional violations are not barred by § 1252(a)(2)(B).'" (quoting *Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004))).[2] In relying on *Poursina*, the majority disregards our more recent decision in *Nakka*, in which we held that "[Section] 1252(a)(2)(B)(i) and (D) channel review of [a plaintiff's] legal *and constitutional* challenges to [USCIS's denial of her claim for adjustment of visa status] into a petition for review from a final order of removal."  *Nakka*, 111 F.4th at 999

---

[1] Chairez's bias claim is based on his assertions that similarly situated inadmissibility waiver applicants are consistently granted inadmissibility waivers, USCIS followed an abnormal procedure in denying his application, and USCIS made negative comments about his 2015 conviction in its denial of his application.  *See* Maj. Op. at 6–9; *see also Chairez v. Mayorkas*, 1:22-cv-00291-AKB, Amended Complaint, Dkt. 16 at 44–51 (D. Idaho Oct. 30, 2023).

[2] Of course, that no one has "discretion" (power) to violate the Constitution is a truism.  Neither could one have a valid statutory mandate to violate the Constitution.  It is also obvious that constitutional claims, whether they arise from the discretionary acts or mandatory acts of the Executive, are not barred from federal court jurisdiction by § 1252 since such constitutional claims are specifically mentioned in § 1252(a)(2)(D) as claims that may be heard in a petition for review, as noted below.  The noted truism is a thin reed upon which to support a claim to judicial jurisdiction.

(emphasis added). Let's examine the two cases to see if there is the conflict noted.

In *Poursina*, Mohammad Poursina asked USCIS to grant him a permanent employment-based visa under 8 U.S.C. § 1153(b)(2). *Poursina*, 936 F.3d at 869. Poursina could not establish that his services were sought by an employer in the U.S., as is generally required by § 1153(b)(2)(A), so he requested a national interest waiver of the employer need element from USCIS pursuant to § 1153(b)(2)(B)(i). *Id.* at 870. USCIS denied his request, and its Administrative Appeals Office affirmed the decision. *Id.* Poursina brought suit in the District of Arizona; he challenged USCIS's denial of his petition and asserted claims under the Administrative Procedure Act ("APA") and a Fifth Amendment due process claim for claimed lack of notice regarding the "request for evidence" that USCIS had allegedly failed to mail to him. *Id.* at 870, 875. The district court held that § 1252(a)(2)(B)(ii) barred its review of the suit and therefore held that it lacked subject matter jurisdiction. *Id.* at 870.

Poursina appealed to us. *Id.* We first held that "because USCIS's decision to deny a national-interest waiver is specified to be in its discretion, § 1252(a)(2)(B)(ii) strips the federal courts of jurisdiction to review USCIS's refusal." *Id.* at 875. But we also held that Poursina's constitutional due process claim for said lack of notice was not subject to § 1252(a)(2)(B)(ii)'s jurisdictional bar because "'decisions that violate the Constitution cannot be "discretionary," so claims of constitutional violations are not barred by § 1252(a)(2)(B).'" *Id.* at 876 (quoting *Wong*, 373 F.3d at 963). Still, since the record proved that service of said notice was adequate, the Court found that Poursina's lack of notice claim failed on the merits. *Id.*

In *Nakka*, the plaintiffs were Indian nationals, who had long resided in the U.S. on nonimmigrant work visas, and their children, who were derivative beneficiaries of their parents' visas. *Nakka*, 111 F.4th at 999. The plaintiffs sought to adjust their visa status to permanent resident through employment-based immigrant visas, and their operative complaint challenged certain generally applicable policies that the defendants—USCIS and the U.S. Department of State—used to determine whether dependent children had "aged out" of eligibility to adjust their status as derivative beneficiaries of their parents by the passage of time. *Id.* The plaintiffs claimed that the challenged "aged out" policies violated the APA and the Equal Protection guarantee of the Due Process Clause of the Fifth Amendment because the Child Status Protection Act's age calculation discriminated against Indian nationals and constituted an invidious, national origin-based violation of the Equal Protection Clause, incorporated into the Fifth Amendment. *Id.* at 1001; *see also Nakka et al v. U.S. Citizenship and Immigration Services et al*, 3:19-cv-02099-YY, Second Amended Complaint, Dkt. 31 at 20 (D. Or. May 20, 2021).

The *Nakka* magistrate judge found that the court had jurisdiction over the claims but recommended the suit be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6); the district court adopted the recommendation. *Nakka*, 111 F.4th at 1002; *see also Nakka v. U.S. Citizenship & Immigr. Servs.*, No. 3:19-cv-2099-YY, 2022 WL 248299, at *1–2 (D. Or. Jan. 27, 2022), *vacated and remanded sub nom. Nakka*, 111 F.4th 995. On appeal, we first concluded that as to those plaintiffs who had not yet submitted applications for adjustment of status to USCIS, their claims were unripe, and for that reason, we lacked jurisdiction to

hear them. *Nakka*, 111 F.4th at 1009–11. Next, we considered plaintiff P. Peddada, who had filed an application for adjustment of status, which USCIS had denied. *Id.* at 1011. We found that her claim was ripe, but we concluded that "[a]lthough [P. Peddada] can rely on that denial to establish ripeness . . . § 1252(a)(2)(B)(i) and (D) channel review of her legal and constitutional challenges to that denial into a petition for review from a final order of removal." *Id.* at 999. Thus, we also lacked jurisdiction over P. Peddada's claim. Accordingly, we vacated the district court order which dismissed the case for failure to state a claim and remanded with instructions to dismiss for lack of jurisdiction. *Id.*

The *Nakka* panel further discussed the implications of its ruling; it is worth quoting the analysis at length:

> [W]hen a plaintiff relies on the denial of her application to satisfy ripeness and the statutory scheme channels review of such denials into a limited review process, then she will still find [herself] at least temporarily barred from review by those channeling provisions… Specifically, § 1252(a)(2)(B)(i) precludes judicial review *except* as provided for under § 1252(a)(2)(D), which preserves review of legal and constitutional claims raised in a petition for review from a final order of removal. Plaintiffs apparently assume that, if USCIS or DHS denies an application for discretionary relief outside removal proceedings, the denial order, and claims challenging policies on which the denial was based, would not be reviewable on

a petition for review from a final removal order under § 1252(a)(2)(D). But the Government maintains, and we agree, that both the denial order and the policy challenges would be reviewable on a petition for review from a final removal order under § 1252(a)(2)(D), even if the agency denied relief when the petitioner had lawful status and was not in removal proceedings… We recognize that individuals like P. Peddada— who have not violated any immigration laws—must violate the law to render themselves removable and obtain judicial review. And, we normally do not require plaintiffs to bet the farm ... by taking the violative action[3] before testing the validity of the law, and we do not consider this a meaningful avenue of relief. However, Congress can require review in this manner by expressly limiting and channeling judicial review . . . [A]lthough P. Peddada can rely on USCIS's denial of her application for adjustment of status to show that her claims are ripe, she is still temporarily barred from obtaining judicial review, and her claims are

---

[3] An immigrant can become removable by, for instance, overstaying his visa, *see* 8 U.S.C. § 1227(a)(1)(B), committing certain criminal offenses after admission, *see id.* § 1227(a)(2), or violating the conditions of his visa, which can in some circumstances be achieved by filing a declaration announcing intent to remain beyond the termination of his visa, *see, e.g. id.* §§ 1227(a)(1)(C); § 1101(a)(15)(F)(i).

> reviewable only if presented in a petition for
> review from a final order of removal.

*Id.* at 1012–14 (internal quotation marks omitted, citations omitted, and footnote added).

The holding in *Nakka* thus conflicts with that in *Poursina*. In *Poursina*, we held that § 1252(a)(2)(B)(ii) and (D) do not restrict *constitutional claims* to a petition for review of a final order of removal, and that federal district courts have subject matter jurisdiction over such constitutional claims because "'decisions that violate the Constitution cannot be discretionary.'" *Poursina*, 936 F.3d at 876 (quoting *Wong*, 373 F.3d at 963). Five years later, in *Nakka*, we held that § 1252(a)(2)(B)(i) and (D) restrict review of all challenges to an agency's determinations, *including constitutional challenges*, to the petition-for-review process.[4] Thus, in one case, a challenge to the constitutionality of USCIS's discretionary decision to deny

---

[4] While *Poursina* addresses § 1252(a)(2)(B)(ii) and *Nakka* addresses § 1252(a)(2)(B)(i), that is not a basis upon which to distinguish their holdings. The majority does not suggest that such a distinction is meaningful and for good reason. Both provisions are under the § 1252(a)(2)(B) heading of "Denials of discretionary relief," and the text of the statute gives no suggestion that constitutional challenges regarding (i) are channeled to a petition for review of a final order of removal while those regarding (ii) are not. Indeed, § 1252(a)(2)(D) clarifies that "[n]othing in subparagraph (B) [which includes (i) and (ii)] . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review..." Section 1252(a)(2)(D) refers to § 1252(a)(2)(B) as a whole. It draws no distinction between (i) and (ii). Additionally, *Wong*, the case relied on by *Poursina*, also does not differentiate between subsections (i) and (ii). *Wong*, 373 F.3d at 963 ("[D]ecisions that violate the Constitution cannot be 'discretionary,' so claims of constitutional violations are not barred by § 1252(a)(2)(B).").

visa adjustment relief led to jurisdiction in federal court absent a petition for review (*Poursina*) and in the other, it did not (*Nakka*).

In the case at hand, we are faced with the question whether the district court has jurisdiction over Chairez's challenge to the constitutionality of USCIS's discretionary decision to deny his applications for a U visa and a waiver of inadmissibility.  Were we to follow *Poursina*, as the majority has done, we would find there to be subject matter jurisdiction over the constitutional claim (were that claim to be "colorable").  Were we to follow *Nakka*, we would find there to be no subject matter jurisdiction over the claim unless and until it is presented on a petition for review of a final order of removal, regardless whether the claim is "colorable."

The majority attempts to distinguish *Nakka* from *Poursina* on the basis that Poursina's Fifth Amendment due process claim challenged the procedures followed by USCIS and Nakka's Fifth Amendment equal protection claim challenged "certain substantive policies adopted by USCIS." Maj. Op. at 23.  I see no principled reason why Fifth Amendment equal protection claims (*Nakka*) would be channeled into petitions for review by § 1252(a)(2)(B) and (D) while Fifth Amendment due process claims (*Poursina*) would not.  Nor does the majority cite any authority for such a proposition.

Sections 1252(a)(2)(B) and (D) make no such distinction between procedural and substantive due process claims.  *See* § 1252(a)(2)(B) ("[N]o court shall have jurisdiction to review . . . *any* . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the

discretion of the Attorney General or the Secretary of Homeland Security.") (emphasis added); § 1252(a)(2)(D) ("Nothing in subparagraph (B) . . . which limits or eliminates judicial review, shall be construed as precluding review of *constitutional claims* or questions of law *raised upon a petition for review* filed with an appropriate court of appeals in accordance with this section.") (emphasis added). *Poursina* made no such distinction between procedural and substantive due process claims. *See Poursina*, 936 F.3d at 876 ("This constitutional claim is not subject to § 1252(a)(2)([B])(ii)'s jurisdictional bar… [because] 'decisions that violate the Constitution cannot be "discretionary," so claims of constitutional violations are not barred by § 1252(a)(2)(B).'" (quoting *Wong*, 373 F.3d at 963)). And *Nakka* made no such distinction between procedural and substantive due process claims. *Nakka*, 111 F.4th at 999 ("[Sections] 1252(a)(2)(B)(i) and (D) channel review of [plaintiff's] legal *and constitutional* challenges to [USCIS's denial for her claim of adjustment of status] into a petition for review from a final order of removal.") (emphasis added).[5]   Thus, I see no basis for such a distinction.

Under the majority's logic, a plaintiff who alleges that the USCIS official who reviewed his application for a waiver of inadmissibility, a precondition for the issuance of a certain

---

[5] Furthermore, to the extent the majority argues that *Zadvydas v. Davis*, 533 U.S. 678 (2001), makes such a distinction between § 1252(a)(2)(B) and (D)'s effect on procedural and substantive due process challenges, *Zadvydas* involved a habeas petition after the petitioner had already been through removal proceedings and ordered removed from the U.S., and nowhere did the Court differentiate as to the existence of subject matter jurisdiction between claims of procedural and substantive violations of constitutional rights.

visa, was racially biased against him, could sue USCIS in federal district court despite the clear text of § 1252(a)(2)(B) and (D). Yet a plaintiff who challenges racial bias in the allocation of visas, *c.f. Nakka*, would have to wait to bring such a claim in a petition for review of a final order of removal. Racial bias in an adjudicator and racial bias in agency allocation of visas both seem to me to be violative of the Fifth Amendment Due Process Clause, and therefore within the clear text of § 1252(a)(2)(B) and (D), and yet the majority demands, without a basis that I can perceive, that such claims be treated differently.

*Poursina*'s holding that constitutional claims are not subject to § 1252(a)(2)(B)'s jurisdictional bar is not only contrary to *Nakka*, but also contrary to our fellow circuits which have considered the question. *See, e.g., Quezada Palacios v. Bondi*, No. 24-2140, 2025 WL 1983482, at *4 (2d Cir. July 17, 2025) ("Assuming *arguendo* that Quezada raises viable constitutional and statutory arguments regarding USCIS's revocation of his [Special Immigrant Juvenile Status] or denial of his application for permanent residence, our precedent is clear that constitutional claims or questions of law arising out of USCIS's denial of discretionary relief must be raised upon a petition for review filed with an appropriate court of appeals." (citing *Shabaj v. Holder*, 718 F.3d 48, 51 (2d Cir. 2013)) (internal quotation marks omitted))[6]; *Roland v. United States Citizenship &*

---

[6] The appellant had alleged that "8 C.F.R. § 204.11's requirement that [Special Immigrant Juvenile Status] applicants not be married violates his constitutional right to freely exercise his religion under the First Amendment to the United States Constitution" and that "the jurisdiction-stripping provisions of 8 U.S.C. § 1252 run afoul of Article III's allocation of authority to the Judiciary as well as procedural due process

*Immigr. Servs.*, 850 F.3d 625, 629 (4th Cir. 2017) ("Section 1252(a)(2)(D) does permit judicial review of constitutional claims or legal questions, but only when raised upon a petition for review filed with an appropriate court of appeals during removal proceedings." (internal citations and quotation marks omitted))[7]; *Green v. Napolitano*, 627 F.3d 1341, 1346 (10th Cir. 2010) ("§ 1252(a)(2)(D) allows judicial review over constitutional and legal challenges only when raised on appeal of a final order of removal." (internal citation and quotation marks omitted))[8]. This circuit split would provide yet another reason for an en banc call. *See* Fed. R. App. P. 40(a)(2)(C).

It is, of course, unsurprising that no other circuit has followed *Poursina*'s logic, as the holding contradicts the plain language of the statutes it purports to interpret. Even our own Court has declined to do so. *Nakka*, 111 F.4th at 999; *see also Akinmulero v. U.S. Dep't of Homeland Sec.*, No. 23-35364, 2025 WL 636328, at *1 (9th Cir. Feb. 27, 2025) (following *Nakka* and neglecting *Poursina* in holding that "Plaintiff's legal *and constitutional challenges* to his individual application for adjustment of status can only be

---

afforded by the Fifth Amendment." *Quezada Palacios*, 2025 WL 1983482, at *4 (internal quotation marks omitted).

[7] The appellants had alleged that USCIS's denial of appellant Roland's Form I-130 Petition to obtain lawful permanent resident status for his wife was "unconstitutional because it violated [their] due process rights and their right to marry and pursue happiness." *Id.* at 628.

[8] The appellants had alleged that USCIS's revocation of the original grant of appellant Green's Form I-130 Petition to obtain lawful permanent resident status for his wife "violated their constitutional due process rights because they never had the opportunity to confront or cross-examine" the wife's former spouse regarding his claims about a fraudulent marriage. *Id.* at 1343.

raised in federal court in a petition for review of a final order of removal" (emphasis added))[9]; *c.f. Garcia v. United States Citizenship & Immigr. Servs.*, 146 F.4th 743 (9th Cir. 2025), *petition for cert. filed*, No. 25-937 (U.S. Jan. 28, 2026) (following the reasoning of *Nakka* in confirming that *Nakka*'s application of § 1252(a)(2)(B) and (D)'s jurisdictional bar and channeling provision to constitutional challenges to USCIS's discretionary decisions applied equally to statutory challenges to USCIS's discretionary decisions).

The majority's choice to follow *Poursina* not only entrenches a poorly reasoned precedent and neglects an intra-circuit split, but it will also have significant practical consequences.    Under the majority's logic, despite § 1252(a)(2)(B)'s jurisdictional bar, an alien may bring a constitutional claim challenging USCIS's discretionary denial of relief in federal district court; then, if his claim is "colorable," discovery will be necessary, precipitating months or even years of litigation. *See* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2025), https://www.uscourts.gov/data-news/data-tables/2025/06/30/federal-court-management-statistics/n-a-3.    The alien may use these proceedings to argue for a stay in any concurrent removal proceedings, an argument that may be compelling, considering the fact that

---

[9] Though the district court said that the nature of his constitutional claim was "not entirely clear," appellant appears to have alleged that USCIS's denial of his Form I-212 application for readjustment of status under 8 U.S.C. § 1255 violated the Due Process Clause of the Fifth Amendment in part because he had previously been granted a Form I-690 waiver. *Akinmulero v. Dep't of Homeland Sec.*, No. C20-1135RSL, 2023 WL 356458, at *3 (W.D. Wash. Jan. 23, 2023), *on reconsideration*, No. C20-1135RSL, 2023 WL 3058014 (W.D. Wash. Apr. 24, 2023).

any such claim would have already been deemed to be at least "colorable" by a federal court. *See* 8 C.F.R. § 1003.29. The result will be added expense and unnecessary delays in the removal of aliens who, while they might prefer to have their claims heard in district courts, would have the opportunity for their claims to be heard on a petition for review of a final order of removal anyway.

Finally, though I agree with the majority's ultimate conclusion that there is no jurisdiction over Chairez's constitutional claim, I do not agree with the majority's choice to avoid jurisdiction on the basis that the claim is not "colorable." While I understand that it is a longstanding practice of this Court to avoid jurisdiction based on whether a claim is "colorable," I think this practice is somewhat illogical and ought to be reevaluated. *See, e.g., Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001) (finding that a claim must have "some possible validity" to trigger jurisdiction) (internal citations and quotation marks omitted).

"The requirement that jurisdiction be established *as a threshold matter* springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (internal quotation marks and citation omitted) (emphasis added). This is so because "[j]urisdiction is power to declare the law," and "[w]ithout jurisdiction the court cannot proceed *at all* in any cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868) (emphasis added).[10] To assert that the jurisdiction of the court depends

---

[10] The majority counterintuitively recognizes this aspect of jurisdiction, referring to it as a "threshold question," in an unrelated passage of the opinion. *See* Maj. Op. at 18 n.4. Yet it creates a "colorability" inquiry

on the merits of the claim – even upon such a low standard as "colorable" – is antithetical to the very definition of jurisdiction. In a sense, it is putting the cart (the merits) before the horse (jurisdiction).

The Supreme Court has made minor exceptions to the rule that a court may not review the merits of a claim without first confirming that it has jurisdiction, but it has limited those exceptions to instances in which "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946). And even then, "[t]he accuracy of calling these dismissals jurisdictional has been questioned." *Id.* at 683. And note the date of the Court's decision: decades before Congress enacted the jurisdiction-stripping provisions of § 1252.

Here, the majority asserts that Plaintiff's due process claim is "entirely speculative and not colorable." Maj. Op. at 23. But the majority offers no further analysis. Was the claim "made solely for the purpose of obtaining jurisdiction," and if so, what is the basis for that assertion? Was the claim simply "insubstantial and frivolous," and if so, what facts made it so? And why would Plaintiff be unable to cure an insubstantial claim by filing an amended complaint and stating facts that would endow his claim with "some possible validity"? *See Torres-Aguilar*, 246 F.3d at 1271 (internal citations and quotation marks omitted); Fed.

---

that is antecedent even to the supposedly "threshold" question of jurisdiction. Maj. Op. at 21–23. What can one call the threshold before the threshold? A pre-threshold threshold?

R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").[11]

Of course, all of these questions would be avoided were the majority simply to follow the clear meaning of § 1252(a)(2)(B) and (D), as we did in *Nakka*, and reject jurisdiction on that basis. But before the Court can do so, an en banc panel of this Court must be constituted to resolve the irreconcilable conflict between *Poursina* and *Nakka*.

For the reasons above, as to Part D, I concur only in the judgment, not in the reasoning invoked.

---

[11] If it were the case that § 1252(a)(2)(B) and (D) did not apply to Chairez's claims, I would be inclined to find that in regard to Chairez's Fifth Amendment due process claim, Chairez failed to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" under Fed. R. Civ. P. 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But I would not find that the Court lacked jurisdiction on the basis of the merits of the claim, as the majority does here.